**UNITED STATES of America**

v.

**Darren JONES, Defendant.**

**No. 84 Cr. 268 (CBM).**

United States District Court, S.D. New York.

Dec. 3, 1984.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Robert Gage, New York City, for U.S.

Robert L. Herbst, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

MOTLEY, Chief Judge.

On October 26, 1984, defendant Darren Jones was found guilty by a jury before this court of aiding and abetting the sale of heroin in violation of 21 U.S.C. section 812, 841(a)(1), and 841(b)(1)(A) and 18 U.S.C. section 2. Before the case was submitted to the jury, the court denied defendant's motion for a judgment of acquittal pursuant to Fed.R.Crim.P. 29 with leave to renew the motion after the jury returned its verdict. That renewed motion is now be- fore the court. For the reasons set forth below, defendant's motion is granted.

This case arises out of "Operation Pressure Point," a major law enforcement effort to curb drug traffic on Manhattan's Lower East Side through undercover "buy-bust" operations. According to evidence adduced at trial, the jury was entitled to find the following facts. At 6:50 p.m. on April 11, 1984, Police Officer Ronald Fitzpatrick, posing as a drug user, approached Ephraim Santiago on Madison Street near the corner of Rutgers Street and requested a "bundle", or ten bags, of heroin. Santiago said that he would have to speak to his partner first, and immediately approached defendant Jones. Santiago and Jones had a brief conversation out of the officer's earshot. Then the pair returned to the officer and walked with him around the corner onto the less-busy Rutgers Street. There Santiago told the officer that "I only have seven bags left," and told him to get his money ready. Santiago then approached Jones, who was apparently standing at least a few feet away, and immediately left him to go back around the corner. While Santiago was gone, Jones remained on the street near the undercover, looking at him periodically. Santiago then returned with James Strong and asked Strong if the undercover was "okay". Strong looked the officer up and down and then replied, "Yes, he's cool." Santiago then handed the officer seven glassine envelopes containing heroin and received $70 in pre-recorded buy money.

Defendant asserts that the evidence presented was insufficient as a matter of law to support his conviction. He bears a heavy burden in making this claim, since a jury verdict must stand if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See *United States v. Gaviria,* 740 F.2d 174, 183 (2d Cir.1984). In evaluating the evidence, the government is entitled to the benefit of all inferences on which the

jury could reasonably have relied. *United States v. Rodriguez*, 702 F.2d 38, 41 (2d Cir.1983).

The Second Circuit's cases offer uneven guidance in applying this facially clear standard, since the question of sufficiency of the evidence depends on a subjective weighing of unique factual records. Defendant cites several cases in which facts arguably more incriminating than those offered against defendant here were deemed insufficient on appeal to support the conviction. See, e.g., *United States v. Gaviria*, 740 F.2d 174 (2d Cir.1984); *United States v. DiStefano*, 555 F.2d 1094 (2d Cir.1977). Defendant argues that the cases require his guilty verdict to be overturned both because there was insufficient evidence to show that he knew drugs were being sold and because there was insufficient evidence to show that he had the intent to aid and abet the sale.

■ The government responds by citing other cases in which verdicts were permitted to rest on factual records difficult to distinguish from those deemed insufficient. See, e.g., *United States v. Diez*, 736 F.2d 840 (2d Cir.1984); *United States v. Rodriguez*, 702 F.2d 38 (2d Cir.1983). What may fairly be gleaned from the case law, however, is that mere presence at the scene of a crime, association with criminals, or even knowledge that a crime is being committed is insufficient to support a conviction for aiding and abetting, absent some purposeful behavior from which the requisite intent can be inferred. See, e.g., *United States v. Soto*, 716 F.2d 989, 991–92 (2d Cir. 1983); *United States v. Johnson*, 513 F.2d 819, 823–24 (2d Cir.1975). Moreover, there must be sufficient evidence in the record for the jury to conclude beyond a reasonable doubt that the defendant knew the nature of the crime being committed. See, e.g., *DiStefano*, 555 F.2d at 1103–04; *United States v. Gallishaw*, 428 F.2d 760, 763–64 (2d Cir.1970).

The court is cognizant of the government's argument that the evidence in this type of case must be looked at in the real-istic context of a street sale of narcotics. Unlike major drug conspiracies where government agents have the opportunity to assemble a case against co-conspirators based on repeated surveillance, the average street sale of heroin is initiated and consummated in a matter of minutes. The government, therefore, will seldom be able to assemble a detailed factual record, and will frequently have to rely on reasonable inference from circumstantial evidence to establish guilt.

Nevertheless, the court is concerned that in this type of "sweep" operation, innocent bystanders or acquaintances who lack sufficient criminal intent may be swept up along with the drug dealers who are properly the government's targets. Evidence introduced at trial must be sufficient to permit a jury to reach a separate verdict of guilty beyond a reasonable doubt as to each individual under indictment.

■ This concern is heightened by the government's reliance on the testimony of Officer Fitzpatrick that street pushers require and routinely use look-outs and "safeties" and that in his opinion Jones performed these necessary roles. The government argues that the jury should be permitted to find, based on this expert testimony, that it was highly unlikely that Santiago would undertake the sale of heroin without this important help from Jones. Although such expert opinion based on observation has been held admissible, *United States v. Carson*, 702 F.2d 351, 369 (2d Cir.), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983), it cannot substitute for evidence of knowledge and intent sufficient to support a conviction.

In this connection, the court notes the concurring opinion of Judge Newman in *United States v. Young*, 745 F.2d 733 (2d Cir.1984) urging a limited role for such testimony regarding drug sales in evaluating the sufficiency of a case against a particular defendant. Judge Newman suggested that expert opinion by police officers carries "an aura of special reliability and trustworthiness," and that a jury may unreasonably assume that an investigative

officer has additional information proving a defendant's guilt. *Id.*, at 765–66 (Newman, J., concurring). While *Carson* holds that such expert testimony may be admissible, Judge Newman nevertheless urged that it not be given undue weight in measuring the sufficiency of a case.

If the observed actions of a defendant do not establish a prima facie case, I do not believe that an expert's opinion that his actions are criminal may carry the prosecution's proof above the requisite line. It is one thing to permit a jury to weigh that opinion in considering an otherwise adequate case; it is quite another matter to let that opinion salvage an otherwise insufficient case.

*Id.*, at 767. This court shares Judge Newman's concern, and fears that in this case the jury may have given undue weight to the expert opinion of Officer Fitzpatrick that Jones was acting as a look-out when he stood on the street and looked occasionally at the officer.

Upon examining the distressingly thin evidence which constitutes the rest of the case against defendant, the court finds it even more likely that the jury substituted the opinion of the undercover for its own process of reasonable inference from the objective actions of defendant. There is no evidence of a prior arrangement between Jones and Santiago. No pre-recorded money was found on Jones, nor any drugs or drug paraphernalia. There is no evidence that Jones possessed heroin or gave any to Santiago or the officer. There is no evidence that Jones heard anything said among Santiago, Strong, and the officer, since the officer's testimony, while inconclusive, apparently places Jones some feet away from the other parties during all discussions of the sale. There is not even any specific evidence that Jones actually saw the drugs and money change hands.

■ It is true, as the government argues, that Jones' knowledge of the drug deal and intent to aid and abet it can be established by inference from circumstantial evidence. Moreover, a jury is not required to eliminate all factual hypotheses inconsistent with guilt. There comes a point, however, where reasonable inference gives way to speculation and conjecture, and alternative hypotheses become too plausible to permit a reasonable jury to reject them beyond a reasonable doubt.

Convictions based on circumstantial evidence have been upheld notwithstanding the arguments of defendants that there is a plausible innocent interpretation for their actions. In these cases, however, the conduct of defendants generally forms a pattern that minimizes the plausibility of non-criminal explanations. See, e.g., *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir.1977) (mathematical chances "infinitesimal" that innocent party would engage in as much "hovering and covering" as defendant); *United States v. Pui Kan Lam*, 483 F.2d 1202, 1208 (2d Cir.1973), *cert. denied*, 415 U.S. 984, 94 S.Ct. 1577, 39 L.Ed.2d 881 (1974) (jury may infer guilt from circumstantial evidence since defendant's story inherently incredible). At the very least, there must be enough evidence in the record for the jury to rationally choose to believe the government's story of the case and harbor no reasonable doubt in so doing.

■ There simply was not enough evidence introduced at trial in this case to support such a choice. The court finds that a reasonable jury, on this record, would have to have a reasonable doubt on two distinct elements of the government's case.

■ First, there was insufficient evidence for the jury to conclude beyond a reasonable doubt that Jones was aware that a drug deal was in progress. As noted above, there is no evidence that Jones heard any of the negotiations or saw any drugs in anyone's possession. Even if the jury could conclude from the evidence that Jones was, at Santiago's request, keeping

an eye on the undercover officer, there is no evidence that Jones knew it was a drug deal, rather than trade in stolen property or prostitution. Knowledge that one is helping *some* kind of criminal activity is insufficient, since an aider and abetter must have the same specific intent as a principal. See *DiStefano,* 555 F.2d at 1103–04; *Gallishaw,* 428 F.2d at 763–64. On the evidence presented, any "inference" that Santiago and Jones discussed drugs when out of earshot of the officer is mere conjecture.

Second, there was insufficient evidence of purposeful conduct on the part of defendant for the jury to conclude beyond a reasonable doubt that Jones intended to aid and abet the sale. Despite the government's strained attempt to turn the transaction into an elaborate affair taking place at two distinct settings, all that the evidence essentially shows is that Santiago talked briefly with Jones, that Jones walked with him around the corner, and that Jones stood by while Santiago fetched Strong and returned to sell drugs in a matter of seconds. Without evidence that Jones had a stake in the venture or said or did something objectively purposeful to help the crime, no reasonable jury could dismiss substantial doubt as to whether Jones was an aider and abetter or merely a friend hanging around. The gaps in knowledge and intent can only be filled in by unsupported speculation as to what Santiago said to him or what Jones heard or saw. In this overall factual context, this court cannot allow the speculation of Officer Fitzgerald that Jones was acting as a lookout, however grounded in experience, to substitute for evidence of knowledge and intent.

There being insufficient evidence of purposeful conduct on the part of defendant from which a reasonable jury could find guilt beyond a reasonable doubt, the defendant's motion for a judgment of acquittal is granted.

SO ORDERED.