89 F.3d 826
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
William SOPKO, Defendant-Appellant.
 No. 95-1194.
 United States Court of Appeals, Second Circuit.
 Nov. 17, 1995.
 
 1
 Appeal from the United States District Court for the Southern District of New York.
 
 
 2
 Appearing for Appellant: Edward M. Shaw, Stillman, Friedman & Shaw, N.Y., N.Y.
 
 
 3
 Appearing for Appellee: Anthony J. Siano, Ass't U.S. Att'y, SDNY, N.Y., N.Y.
 
 
 4
 S.D.N.Y.
 
 
 5
 AFFIRMED.
 
 
 6
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York, and was argued by counsel.
 
 
 7
 ON CONSIDERATION WHEREOF, it is now hereby ordered, adjudged, and decreed that the judgment of said District Court be and it hereby is affirmed.
 
 
 8
 Defendant William Sopko appeals from a judgment of the United States District Court for the Southern District of New York, Charles L. Brieant, Judge, convicting him, following a jury trial, of embezzlement, in violation of 18 U.S.C. §§ 664 and 2 (count one); violation of the Taft-Hartley Act, 29 U.S.C. §§ 186(b)(1) and (d)(2) (count two); making false statements and omissions in ERISA documents, in violation of 18 U.S.C. §§ 1027 and 2 (count three); and solicitation of payments with intent to be influenced in the performance of his duties as a union pension fund trustee, in violation of 18 U.S.C. §§ 1954 and 2 (count four). Sopko was sentenced principally to 15 months' imprisonment, to be followed by a two-year term of supervised release, and was ordered to pay restitution in the amount of $104,587.71. On appeal, he contends principally (1) that his convictions should be reversed and the indictment dismissed on the ground that there was insufficient evidence of intent on any count, and (2) alternatively, that he is entitled to a new trial on the ground that the trial court erred in refusing to instruct the jury that good faith was a complete defense to the charges against him. Finding no basis for reversal or a new trial, we affirm the judgment.
 
 A. Sufficiency
 
 9
 In challenging the sufficiency of the evidence to support his conviction, a defendant bears a heavy burden. See, e.g., United States v. Esdaille, 769 F.2d 104, 108 (2d Cir.), cert. denied, 474 U.S. 923 (1985); United States v. Losada, 674 F.2d 167, 173 (2d Cir.), cert. denied, 457 U.S. 1125 (1982). In reviewing such a challenge, we must credit every inference that could have been drawn in the government's favor. See, e.g., United States v. Weiss, 930 F.2d 185, 191 (2d Cir.), cert. denied, 502 U.S. 842 (1991); United States v. Bagaric, 706 F.2d 42, 64 (2d Cir.), cert. denied, 464 U.S. 840 (1983); United States v. Carson, 702 F.2d 351, 361 (2d Cir.), cert. denied, 462 U.S. 1108 (1983). We must view pieces of evidence not in isolation but in conjunction. See, e.g., United States v. Podlog, 35 F.3d 699, 705 (2d Cir.1994), cert. denied, 115 S.Ct. 954 (1995); United States v. Brown, 776 F.2d 397, 403 (2d Cir.1985), cert. denied, 475 U.S. 1141 (1986). Where there are conflicts in the testimony, we must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses. See, e.g., United States v. Weiss, 930 F.2d at 191; United States v. Stratton, 779 F.2d 820, 828 (2d Cir.1985), cert. denied, 476 U.S. 1162 (1986); United States v. LeRoy, 687 F.2d 610, 616 (2d Cir.1982), cert. denied, 459 U.S. 1174 (1983). And we must affirm the conviction so long as, from the inferences reasonably drawn, the jury might fairly have concluded guilt beyond a reasonable doubt. See, e.g., United States v. Buck, 804 F.2d 239, 242 (2d Cir.1986); United States v. Taylor, 464 F.2d 240, 244-45 (2d Cir.1972). The weight of the evidence is a matter for argument to the jury, not a ground for reversal on appeal. See, e.g., United States v. Roman, 870 F.2d 65, 71 (2d Cir.), cert. denied, 490 U.S. 1109 (1989). These principles apply whether the evidence being reviewed is direct or circumstantial. See Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Sureff, 15 F.3d 225, 228 (2d Cir.1994). Viewing the evidence, in accordance with these principles, in the light most favorable to the government, see, e.g., Glasser v. United States, 315 U.S. at 80, we conclude that Sopko has not met his burden on any count.
 
 
 10
 With respect to the first three counts, Sopko contends that the evidence was insufficient to establish his intent to defraud. He contends that there was no evidence that he knew that Mary Leone or Walter Gaylor, both hired at Sopko's behest, did not perform the services for which they were being paid. We disagree. First, there was ample evidence that Leone was forced upon the builder by Sopko and did not perform. The record included testimony that the modular houses were to be purchased from Deluxe Homes of Pennsylvania ("Deluxe"); that the builder proposed to engage the services of one Brian Freeman, the local agent for Deluxe, but Sopko objected on the ground that Freeman was nonunion and insisted instead that the builder use Leone; that Leone, a nonunion woman in her 70's, had had no prior connection with Deluxe; that Leone had had no prior involvement in the erection of modular houses; that Leone was the aunt of Sopko's wife; that when the builder met with Leone prior to November 1986 to discuss getting the project started, stating that they needed to go to the Deluxe factory as soon as possible and emphasizing the "necessity for moving rapidly on it," Leone's response was that she was going to Florida and would not return until March or April of 1987; that the builder next saw Leone when she came to the job site in June 1987 to demand her fee; and that Leone played no role in the dealings between the builder and Deluxe and performed no services for the project. Second, there was evidence that Sopko knew Leone was not performing any services. The record included testimony that during the early stages of the project the builder complained about Leone to Sopko's advisers, who in turn talked to Sopko about the builder's complaints; that Sopko's response was that Leone was the broker/dealer and she was to be paid; that in 1987, cost-overrun discussions included the builder's criticism of the requirement that he make payments to Leone, and Sopko's response was to insist that Leone was a broker/dealer and was to be paid; that in March 1988, there were renewed discussions of the builder's complaints about Leone, and again Sopko insisted that she be paid; and that in July 1988, as discussed below with respect to count four, when the builder attempted to discontinue payments to Leone, Sopko withheld other payments until assured that Leone would be paid.
 
 
 11
 As to Gaylor, there was testimony that Sopko insisted that Gaylor, an elderly man retired for a decade, be hired as a "rigger" on the project; that Gaylor lived with Leone; that in the project's two-year duration, Gaylor's participation consisted of visiting the project on a total of 50 days for an hour or two, during which he principally told stories about the old days; and that though the builder repeatedly complained that Gaylor was a hindrance to the project, Sopko insisted that he was necessary for the job and was to be paid.
 
 
 12
 We conclude that the evidence was sufficient to permit a rational juror to conclude beyond a reasonable doubt that Sopko knew that Leone and Gaylor were not performing services on the project and that he insisted that they be paid nevertheless.
 
 
 13
 Count four charged that Sopko, with intent to be influenced in the performance of his duties as a union pension fund trustee, solicited and caused payments to be made to a third party for services not rendered. Sopko contends that, though he recommended the hiring of Leone and Gaylor, the evidence was insufficient to establish that he intended to be influenced in the performance of his duties. Again we disagree. The record included evidence that in July 1988, when the project was considerably over budget, the builder submitted to Sopko a draw request that omitted any payment for Leone and that Sopko refused to pay that request, stating that no part of it would be paid unless provision for payment to Leone were added; and that Sopko approved the request and made the payment only after approximately $19,000 was added for Leone. The jury could easily find from this evidence that Sopko approved the expenditure of pension funds in exchange for the builder's undertaking to make that $19,000 payment to Leone.
 
 B. Instructions as to Good Faith
 
 14
 Nor are we persuaded that Sopko is entitled to a new trial on the ground that the trial court's instructions on good faith were erroneous. "Where the defendant requests a charge as to his defense of good faith, there is no basis for reversal where the court's instructions have properly explained the thrust of that defense." United States v. Paccione, 949 F.2d 1183, 1200-01 (2d Cir.1991), cert. denied, 112 S.Ct. 3029 (1992); see also United States v. McElroy, 910 F.2d 1016, 1026 (2d Cir.1990).
 
 
 15
 In the present case, the trial court instructed the jury with respect to issues of knowledge and willfulness and included the statement that "[t]he burden of establishing lack of good faith and the burden of proving criminal intent rests upon the prosecution, and that burden must be satisfied beyond a reasonable doubt.... [A] defendant is never under any burden to prove good faith or the honesty of his intentions and actions." A supplemental instruction reiterated the instructions on knowledge and willfulness and stated again that "the burden of establishing lack of good faith and the burden of proving criminal intent rests upon the prosecution. You must be satisfied beyond a reasonable doubt. And a defendant is never under any burden to prove his good faith or that his intentions and actions were honest." The court's instructions adequately covered the issue of good faith.
 
 
 16
 Sopko's reliance on United States v. Regan, 937 F.2d 823 (2d Cir.1991), modified on other grounds, 946 F.2d 188 (2d Cir.1991), cert. denied, 504 U.S. 940 (1992), for the proposition that a "generalized good faith charge" is insufficient, is misplaced. In Regan, we noted that the defendants were charged in 64 counts that "cover[ed] the waterfront" of tax fraud, securities fraud, mail fraud, wire fraud, conspiracy, and RICO, and we held that a generalized charge on good faith was inadequate to instruct the jury on the defendants' specific good faith defense based on one particular Internal Revenue Code section. See 937 F.2d at 826-27. The counts against Sopko, in contrast, were neither numerous nor complex, and the instructions given by the court adequately communicated the essence of his defense to the jury.
 
 
 17
 We have considered all of Sopko's contentions on this appeal and have found in them no basis for reversal or a new trial. The judgment of conviction is affirmed.