UNITED STATES of America,

v.

Michel JOBIN, Defendant.

No. 2:03–CR–88.

United States District Court,
D. Vermont.

Jan. 27, 2004.

Karen Rush Shingler, Esq., Burlington, VT, for Michel Jobin.

Stephen D. Kelly, AUSA, Office of the United States Attorney, Burlington, VT, United States of America.

### MEMORANDUM AND ORDER

SESSIONS, Chief Judge.

Pursuant to Federal Rules of Evidence 403 and 702, Defendant Michel Jobin moves in limine to exclude the Government's expert witness, DEA Special Agent Richard Carter. For the reasons set forth below, Jobin's motion is GRANTED in part and DENIED in part.

### Facts

On July 27, 2003, Michel Jobin, a Canadian citizen, presented himself for inspection at the United States Port of Entry at Highgate Springs, Vermont. He was driving a commercial tractor trailer. According to the Government, Jobin provided identification in the name of "Phillippe Jobin," his brother, to a United States Customs Inspector. The Government also alleges that Jobin presented a manifest declaring that the trailer for his truck contained newsprint paper destined for Massachusetts.

Customs inspectors conducted a secondary search of the trailer and discovered a significant quantity of marijuana and ecstasy. On August 7, 2003, a grand jury indicted Jobin on two counts of importing narcotics, in violation of 21 U.S.C. §§ 952(a) and 960(b), two counts of possessing narcotics with intent to distribute, in violation of 21 U.S.C. § 841, and one count of providing a materially false and fraudulent statement to a United States Customs Agent in violation of 18 U.S.C. § 1001. (Doc. 5) Pursuant to a superceding indictment, Jobin was charged with seven additional counts of providing materially false and fraudulent statements in violation of 18 U.S.C. § 1001. (Doc. 20)

Jobin denies knowledge of the narcotics found in the trailer. A jury trial is to be held in this Court on January 28–30, 2004. On January 7, 2004, Jobin moved in limine to exclude the anticipated testimony of Agent Carter pursuant to Rules 403 and 702. (Doc. 18) The Government filed its opposition on January 14, 2004. (Doc. 27) On January 22, 2004, after oral argument, the Court granted Jobin's motion in part and denied it in part. The Court now provides a brief written opinion to clarify its holding.

### Discussion

I. *The Use of Expert Testimony on Drug Operations*

A. *Knowledge Helpful to the Jury*

■ Jobin first moves to exclude Agent Carter's testimony pursuant to Rule 702 on the ground that it will not be helpful to the jury. A district court may admit expert testimony if it finds that "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. In contrast, expert testimony is not admissible if it is directed to "lay matters which a jury is capable of understanding and deciding without the expert's help." *Andrews v. Metro North Commuter R.R.*, 882 F.2d 705, 708 (2d Cir.1989); *see also* Fed. R.Evid. 702 advisory committee's note (" '[t]here is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.' ") (quoting Ladd, *Expert Testimony* 5 Vand. L.Rev. 414, 418 (1952)).

■ It is well-established that the operations of narcotics dealers are the proper subject for expert testimony under Rule 702. *E.g., United States v. Castillo,* 924 F.2d 1227, 1232 (2d Cir.1991). Nevertheless, in *Castillo* the Second Circuit limited the use of such testimony to "occasions where the subject matter of the testimony is beyond the ken of the average juror." *Id.* (holding that the district court's admission of expert testimony on the details of the drug trade was reversible error); *accord United States v. Cruz,* 981 F.2d 659, 664 (2d Cir.1992) to permit expert testimony, drug operations must "have esoteric aspects reasonably perceived as beyond the ken of the jury".

■ The Government offers Agent Carter to testify as an expert about the premium price Canadian-grown marijuana commands in the United States marketplace. Agent Carter will provide the jury with the street value of high-grade marijuana and ecstasy and testify about the profits that can be garnered from smuggling these drugs. In addition, Agent Carter will provide the jury with general background information about the marijuana industry in Ontario and drug smuggling across the Canadian border. He will testify about the hurdles smugglers face at the border and the techniques they use to evade those hurdles. He will describe his previous investigations of smugglers who used tractor trailer trucks to transport drugs from Canada to the United States. Based on his experience, Agent Carter will state that drug smugglers often pay truck drivers to act as couriers.

This kind of background information about the Canadian marijuana industry and the strategies employed by smugglers is sufficiently esoteric to be beyond the ken of the average juror. It will help the jury understand the evidence by providing context for the underlying events. Therefore, Agent Carter's testimony on these issues is admissible under Rule 702.

In addition, the Government asserts that Agent Carter should be permitted to testify that drug smugglers never use unwitting couriers because this technique creates too great a risk of failed delivery given the value of the drugs. The Government further argues that Agent Carter be allowed to testify that he has never interviewed a marijuana smuggler who has attempted to transport drugs into the United States using an unwitting courier.

■ This testimony is not admissible under Rule 702. There is a significant difference between Agent Carter testifying that drug smugglers *often* or *typically* use paid couriers and him testifying that they *never* use unwitting couriers. The former testimony provides the jury with useful background information about the practices of drug smugglers. The latter is essentially Agent Carter's opinion that Jobin knew about the drugs. The average juror does not need "scientific, technical or other specialized knowledge" to determine this factual issue. To the contrary, the determination is "well-within the reach of the average juror's common sense." *Castillo*, 924 F.2d at 1233.

The Government avers that Agent Carter's expert testimony, even on non-esoteric issues, should be permitted because Jobin maintains he was unaware of the drugs found in the trailer. In support of this argument, the Government cites several Second Circuit decisions affirming the admission of expert testimony where the accused's defense was ignorance of the drug transaction. *See Headley v. Tilghman*, 53 F.3d 472, 476 (2d Cir.1995) (affirming state trial court's admission of expert testimony about drug paraphernalia and the characteristics of a drug house where defendant argued that his presence at the house was a coincidence); *United States v. Tapia–Ortiz*, 23 F.3d 738, 741 (2d Cir.1994) (affirming district court's admission of expert testimony on the use of beepers, code

numbers, accounting books, nicknames and cash in drug transactions where defendants argued that Government's version of events did not suggest criminal activity); *United States v. Brown*, 776 F.2d 397, 400–02 (2d Cir.1985) (affirming district court's admission of expert testimony on the role of a "steerer" in a drug transaction where the accused's defense was that he was on the scene but unaware of any drug transaction); *see also Cruz*, 981 F.2d at 664 (stating in dicta that expert testimony may be used "on some occasions to explain even non-esoteric matters, when the defense seeks to discredit the government's versions of events as improbable criminal behavior").

The Government's reliance on these cases is unavailing for several reasons. First, the experts in these cases testified to the typical conduct of drug dealers and traffickers *see Headley*, 53 F.3d at 474; *Tapia–Ortiz*, 23 F.3d at 740; *Brown*, 776 F.2d at 399–400, but do not appear to have testified that drug dealers and traffickers always act in one way and never act in another way. Thus, Agent Carter's proposed testimony goes considerably further than the testimony in the above-cited cases.

Furthermore, the defendants in these cases were charged with, *inter alia*, conspiring to distribute narcotics. *Headley*, 53 F.3d at 473; *Tapia–Ortiz*, 23 F.3d at 739; *Brown*, 776 F.2d at 397. In each case, complicated surrounding circumstances made the defendant's role in the conspiracy unclear. In *Headley*, the defendant was arrested at a house that contained drug paraphernalia and $30,000 in cash, but a small quantity of drugs. *Headley*, 53 F.3d at 474. The police searched the defendant and found only $890 in cash and a beeper on his person. *Id.* In *Tapia–Ortiz*, defendants were arrested after a long undercover investigation and the

orchestrated sale of $260,000 worth of cocaine. *Tapia–Ortiz*, 23 F.3d at 739. One defendant was arrested in possession of the cocaine after a high-speed chase, but the second defendant, Tapia–Ortiz, was found with only a beeper and business cards with contact numbers written on them. *Id.* Similarly, in *Brown*, the defendant facilitated the sale of heroin to an undercover officer, but when arrested he possessed neither heroin nor the marked bills the officer used in the transaction. *Brown*, 776 F.2d at 399.

The Second Circuit upheld the trial courts' decisions to admit expert testimony, even on certain non-esoteric matters, in part because that testimony was necessary to help the juries understand the surrounding circumstances and therefore understand the defendants' roles in the conspiracies. *See Headley*, 53 F.3d at 475–76; *Tapia–Ortiz*, 23 F.3d at 741; *Brown*, 776 F.2d at 399–400. In this case, however, Jobin is not charged with a conspiracy. Moreover, there are no surrounding circumstances, such as an absence of confiscated drugs, that complicate his alleged offense conduct. In fact, the circumstances are straightforward: Customs Inspectors found a large quantity of marijuana and ecstasy in a tractor trailer operated by Jobin and he denies any knowledge of the drugs.

Finally, these cases do not compel this Court to admit expert testimony under a specific set of circumstances. Rather, by upholding the trial courts' determinations, the Second Circuit affirms this Court's "broad discretion" to determine admissibility under Rule 702. *E.g., Tapia–Ortiz*, 23 F.3d at 740 (quoting *United States v. Nersesian*, 824 F.2d 1294, 1308 (2d Cir. 1987)). The Court exercises that discretion here to exclude Agent Carter's testimony that drug smugglers never use unwitting couriers to smuggle drugs across the Canadian border.

### B. *Bolstering Fact Witnesses*

■ Because Agent Carter's testimony will include descriptions of previous drug smuggling operations that he has investigated, including operations involving tractor trailers, a further instruction is warranted. The Government is cautioned that Agent Carter's expert testimony about a typical Canadian drug smuggling operation may not be used solely to bolster or corroborate the testimony of the Government's fact witnesses. The Second Circuit has repeatedly held that this is an unacceptable use of expert testimony. *See Castillo*, 924 F.2d at 1234–35; *Cruz*, 981 F.2d at 663. Therefore, the Court will sustain an objection by defense counsel to any suggestion by the Government that Jobin is culpable because the alleged circumstances in this case match Agent Carter's description of a typical drug smuggling operation.

### II. *Rule 403*

■ Jobin also moves to exclude Agent Carter's testimony because of its potentially prejudicial effect on the jury. A district court may exclude an expert's testimony if "its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed.R.Evid. 403. Testimony admitted under Rule 702 can still be excluded under Rule 403. *E.g., Tapia–Ortiz*, 23 F.3d at 742.

■ Agent Carter's expert testimony about the quality and street value of marijuana and ecstasy, the marijuana industry in Ontario and the techniques of Canadian drug smugglers is highly probative because it provides the jury with contextual information about the drug trade. Jobin's motion to exclude these portions of Agent Carter's testimony pursuant to Rule 403 is denied.

In contrast, Agent Carter's testimony that, in his experience, smugglers never entrust their cargo to unwitting couriers, strongly suggests to the jury that Agent Carter believes Jobin was a participant in the drug smuggling operation. Such a suggestion, coming from a law enforcement officer with extensive experience in drug smuggling, is very prejudicial. When made aware of all the facts and circumstances of the case, the jury will be capable of determining on its own whether Jobin was a drug courier or an unwitting victim. Agent Carter's expert testimony that drug smugglers never use unwitting couriers is therefore excluded under both Rules 403 and 702.

### Conclusion

Wherefore, Jobin's motion to exclude Agent Carter's testimony pursuant to Rules 403 and 702 is GRANTED in part and DENIED in part.