Irving Anolik, New York City, for defendant-appellant.

Robert Gold, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., Barbara Ann Rowan and S. Andrew Schaffer, Asst. U. S. Attys. on the brief), for appellee.

Before LUMBARD, FEINBERG and OAKES, Circuit Judges.

FEINBERG, Circuit Judge:

**UNITED STATES of America, Appellee,**

v.

**Camillo RIZZUTO, Defendant-Appellant.**

**No. 100, Docket 74-1724.**

United States Court of Appeals, Second Circuit.

Argued Sept. 25, 1974.

Decided Oct. 9, 1974.

Defendant Camillo Rizzuto appeals from a judgment of the United States District Court for the Southern District of New York, after a non-jury trial before Charles L. Brieant, Jr., J., convicting him of conspiring to violate the narcotics laws and of the substantive offense of possessing 13 kilos of heroin with intent to distribute.[1]. The judge sentenced defendant on each count to concurrent prison terms of four years to be followed by special parole of three years. On appeal, Rizzuto argues only that there was insufficient evidence to link him to the narcotics conspiracy and that since his conviction on the substantive count depended upon application of the doctrine of Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), the conviction on both counts must be set aside.

The evidence of a conspiracy, replete with furtive, abortive meetings and

---

1. The judge's detailed findings of fact and conclusions of law are incorporated in a 27-page opinion.

cryptic telephone conversations leading to the actual transfer of heroin for cash, was overwhelming. As to whether Rizzuto was part of the conspiracy, the record discloses the following. In April 1972, a special agent of the United States Drug Enforcement Administration intercepted a suitcase containing 26 bags of white powder at Kennedy Airport. The agent had been alerted to its arrival from Paris by a French informant. After it was determined that the white powder was heroin, the suitcase was turned over to M. Chaminadas, a French undercover agent working with the Americans. Several days passed while Chaminadas tried to arrange a sale of the heroin through Canadian traffickers he knew. Finally, it was agreed that the transfer would take place at a New York City hotel on May 9, 1972.

Just before noon of that day Rizzuto registered at the hotel under a false name. He was given Room 1005 on the tenth floor. Chaminadas was registered in a room on the floor above. Rizzuto's co-defendant, Anthony Castiglione,[2] who had already met Chaminadas the night before when he examined the heroin, was registered in Room 1525. At about noon, Castiglione asked Chaminadas to come to his room to receive a call from Canada. Chaminadas did so, spoke to one of the Canadian contacts, and was assured that the money would soon be available. Later that afternoon, Rizzuto went to Castiglione's room and stayed briefly. Chaminadas then returned to Castiglione's room, and an hour later Rizzuto was again seen entering that room. At about 4:00 p. m., Castiglione told Chaminadas that the money was due to arrive from Brooklyn at about 9:30 that evening.

Shortly before 9:10 p. m., Castiglione was observed leaving the area of Rizzuto's room on the tenth floor carrying a small black attache case later found to contain $122,000. Castiglione went to Chaminadas's room on the eleventh floor and traded the money for the heroin. Castiglione then went back to the floor below and was walking towards Rizzuto's room when, apparently sensing that he was being followed, he became nervous. Castiglione was arrested before he reached Rizzuto's room. An agent then continued to the room, knocked, and when Rizzuto answered, arrested him.

Rizzuto denied any connection with the conspiracy. His explanation at trial for his presence at the hotel under an assumed name was that he was to meet some "girls" procured by his friend Castiglione. Rizzuto, an unemployed, married father of two from Brooklyn, had paid $25.61 for a room and had waited for over nine hours for the girls when he was arrested. He testified that he did not know how much the girls were to be paid or who was to pay them. The trial judge characterized Rizzuto's story as "incredible."

The evidence linking Rizzuto to the scheme was circumstantial but compelling none the less. Cases like United States v. Vilhotti, 452 F.2d 1186 (2d Cir. 1971), cert. denied, 405 U.S. 1041, 92 S.Ct. 1314, 31 L.Ed.2d 582 (1972), and United States v. Cirillo, 499 F.2d 872, 884–887 (2d Cir. 1974), where we reversed convictions based on presence alone, are distinguishable. In Vilhotti, the only evidence linking two defendants to the crime was their presence at a garage where stolen goods were stored. In the same case, however, we affirmed the conviction of another defendant where the evidence showed not only presence but also prior activity that indicated criminal knowledge. Here, Rizzuto's visits to Castiglione's room at crucial times, Castiglione's departure from the area of Rizzuto's room with $122,000 in an attache case and later return with the heroin while Rizzuto waited in the room, and the unbelievable tale told by Rizzuto all justified a finding that Riz-

2. Before trial, Castiglione was released on $100,000 bail. He never appeared and has been indicted for the bail violation. Another defendant named in the indictment is dead, having perished, according to Judge Brieant, "of an acute plumbiferous condition incurred while engaged in unrelated narcotics activities" prior to trial.

zuto was a knowing participant in the conspiracy. *Cirillo* is similarly inapplicable. There we reversed two narcotics conspiracy convictions where the only independent evidence available consisted of presence at meetings with other defendants. Unlike the situation here, there was no evidence of what was discussed at the meetings, nor were they conducted in unusual places or under obviously suspicious circumstances.

In short, there was sufficient evidence to support the trial judge's findings that Rizzuto

> knew that a narcotics transaction was being conducted in the [hotel] on May 9th, and that by his presence at the scene of the crime, and by his actions, Rizzuto lent his support to the object of the conspiracy and established his stake in the outcome.

The judgment of conviction is affirmed.