UNITED STATES of America, Appellee,

v.

Warren TYLER, Defendant-Appellant.

No. 697, Docket 84–1329.

United States Court of Appeals,
Second Circuit.

Argued Jan. 21, 1985.
Decided March 26, 1985.

Robin Charlow, The Legal Aid Society, Federal Defender Services Unit, New York City (Sylvia Peck, The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for defendant-appellant.

Arthur W. Mercado, Asst. U.S. Atty., S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Martin L. Perschetz, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for appellee.

Before VAN GRAAFEILAND, MESKILL and WINTER, Circuit Judges.

MESKILL, Circuit Judge:

Warren Tyler appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York, Cannella, J., on a jury verdict. Following a two day trial, the jury found Tyler guilty of conspiracy to distribute heroin in violation of 21 U.S.C. § 846 (1982) and of aiding and abetting the distribution of heroin in violation of 18 U.S.C. § 2 (1982) and 21 U.S.C. § 841 (1982). Tyler was sentenced to concurrent terms of two years imprisonment on each of the two counts, to be followed by a five year special parole term on the aiding and abetting count. He is currently serving his sentence.

Tyler advances one claim on appeal. He argues that the evidence presented at trial was insufficient to establish his guilt beyond a reasonable doubt. For the reasons that follow, we accept Tyler's argument with respect to the conspiracy count but reject it with respect to the aiding and abetting count.

## BACKGROUND

Tyler's arrest, indictment and conviction stemmed from a purchase of heroin by New York City Police Detective Cleveland Baxter. Baxter made the actual purchase of heroin from James Bennett. Tyler was arrested because Baxter identified Tyler as the man who had introduced him to Bennett. Tyler was charged in two counts of a four count indictment. Count one charged conspiracy to distribute heroin and count two charged aiding and abetting the distribution of heroin.

At trial, Baxter was the government's main witness. He testified that on May 10, 1984, he went to Harlem as part of an undercover narcotics operation. His goal was to make at least two purchases of drugs. As he was walking along the street he encountered Tyler. After an exchange of greetings, Tyler asked Baxter "if everything was all right." Tr. at 15. Baxter told Tyler that he "was looking for some good dope." (Dope is the street name for heroin.) *Id.* Tyler told Baxter that "he would take care of [him]." *Id.*

The two began to walk down the street. They stopped and Tyler went off to the side and spoke briefly to an unidentified individual. Tyler returned to Baxter and told him that "he was trying to get [him] something that was good, because there was a lot of dope on the street that was not good." *Id.* The two then continued to walk down the street.

They next encountered Bennett. Tyler and Bennett stepped off to the side and had a brief conversation, after which Bennett walked over to Baxter and asked "how many did [he] want." Tr. at 16. Baxter told him three. Baxter and Bennett then began to walk down the street. As they were walking, they exchanged three glassine envelopes containing heroin for thirty dollars.

After completing the transaction with Bennett, Baxter turned around and walked back up the street. As he was walking away, Tyler approached him and asked him for some change. Baxter told him that he was low on cash and "that maybe he could check with [Bennett] and [Bennett would] take care of him." Tr. at 17. Baxter testified that Tyler replied "yes, but he just wanted to have more change, he was trying

to get something." *Id.* Baxter gave Tyler seventy-five cents and the two parted company. Baxter reported the buy to his back-up team and they arrested Tyler approximately twenty minutes later. At the time of his arrest, Tyler was carrying two dollars and seventy-five cents.

Tyler was the only witness called by the defense. He testified that although Baxter asked him about drugs, he did not take Baxter to Bennett nor did he have any role in the sale. He did testify, however, that he saw the sale take place and that after it was completed he approached Baxter to ask him for some money.

After two days of deliberations the jury found Tyler guilty on both the conspiracy count and the aiding and abetting count. Tyler's motion for entry of judgment of acquittal notwithstanding the verdict or for a new trial was denied. The appeal before us ensued.

## DISCUSSION

### 1. *Conspiracy*

Tyler's first argument is that there was insufficient evidence of an agreement between him and Baxter to establish the existence of a conspiracy to distribute heroin. The parameters of an appellate court's inquiry into the sufficiency of the evidence supporting an appellant's conviction are clear.

A defendant challenging the sufficiency of the evidence carries "a very heavy burden". *United States v. Carson,* 702 F.2d [351] at 361 [(2d Cir.1983)]; *United States v. Losada,* 674 F.2d 167, 173 (2d Cir.), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982). "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Further, "pieces of evidence must be viewed not in isolation but in conjunction", *United States v. Carson,* 702 F.2d at 362, and a reviewing court must draw all available inferences,

and resolve all issues of credibility, in favor of the jury's verdict. *United States v. Bagaric,* 706 F.2d 42, 64 (2d Cir.), *cert. denied,* — U.S. —, —, —, 104 S.Ct. 133, 134, 283, 78 L.Ed.2d 128, 128, 261 (1983). *United States v. Young,* 745 F.2d 733, 762 (2d Cir.1984).

In addition, we have recognized that " '[a] conspiracy by its very nature is a secretive operation.' " *Id.* (quoting *United States v. Provenzano,* 615 F.2d 37, 45 (2d Cir.), *cert. denied,* 446 U.S. 953, 100 S.Ct. 2921, 64 L.Ed.2d 810 (1980)). Thus, we have held that the existence of "a conspiracy ... may be established ... through circumstantial evidence." *United States v. Sanzo,* 673 F.2d 64, 69 (2d Cir.), *cert. denied,* 459 U.S. 858, 103 S.Ct. 128, 74 L.Ed.2d 111 (1982). Moreover, to be sufficient "the evidence need not have excluded every possible hypothesis of innocence." *United States v. Soto,* 716 F.2d 989, 993 (2d Cir.1983).

■ Our narrow standard of review, however, does not require us to affirm all conspiracy convictions. On the contrary, we have found the evidence insufficient to sustain a conspiracy conviction in a number of cases. *See, e.g., Young,* 745 F.2d at 764; *United States v. Gaviria,* 740 F.2d 174, 184 (2d Cir.1984); *Soto,* 716 F.2d at 991–93. Likewise, we find the evidence in the instant case insufficient to sustain Tyler's conspiracy conviction.

The government's evidence against Tyler consisted mainly of Baxter's testimony. According to Baxter's version of the transaction, Tyler told Baxter that he would get him some good dope. After making some type of inquiry of an unidentified individual, Tyler encountered Bennett. Tyler had a brief side conversation with Bennett and Bennett then approached Baxter. Bennett and Baxter walked away from Tyler and consummated their deal. The two then separated and Tyler walked up to Baxter and asked him for some change. Conspicuously absent from this scenario is any evidence that Tyler asked Baxter how much heroin he sought to purchase, that Tyler

indicated that he had a specific source of heroin in mind for Baxter, that Tyler knew where to find Bennett or expected him to be in the area, or that Tyler had made any previous deals with Bennett.[1]

■ The evidence adduced by the government merely shows that Tyler helped a willing buyer locate a willing seller. As we have stated in the past, such evidence, standing alone, is insufficient to establish the existence of an agreement between the facilitator and the seller. *United States v. Hysohion,* 448 F.2d 343, 347 (2d Cir.1971) ("The fact that Rimbaud told Everett, a willing buyer, how to make contact with a willing seller does not necessarily imply that there was an agreement between that seller ... and Rimbaud."); *United States v. Torres,* 519 F.2d 723, 726 (2d Cir.), *cert. denied,* 423 U.S. 1019, 96 S.Ct. 457, 46 L.Ed.2d 392 (1975) ("membership in a conspiracy is not established ... by the fact that a defendant told a willing buyer how to make contact with a willing seller" (citations omitted)).[2]

■ In an attempt to fill in the holes in its case, the government relies on the jury's obvious disbelief of Tyler's testimony to support the conspiracy conviction. We agree with the government that " '[o]nce a defendant offers evidence after the denial of a motion for acquittal at the close of the Government's case ... [he] waives any claim as to the sufficiency of the Government's case considered alone.' "

*United States v. Maniego,* 710 F.2d 24, 28 (2d Cir.1983) (per curiam) (quoting *United States v. Keuylian,* 602 F.2d 1033, 1040–41 (2d Cir.1979)); *see also United States v. Pui Kan Lam,* 483 F.2d 1202, 1208 n. 7 (2d Cir.1973), *cert. denied,* 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974). We also agree that the jury has a right to consider the defendant's lack of credibility in reaching its verdict. *See United States v. Panza,* 750 F.2d 1141, 1150 (2d Cir.1984); *United States v. Bagaric,* 706 F.2d 42, 66 (2d Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 133, 134, 283, 78 L.Ed.2d 128 (1984); *United States v. Callabrass,* 607 F.2d 559, 565 (2d Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980); *United States v. Singleton,* 532 F.2d 199, 204 (2d Cir.1976); *United States v. Rizzuto,* 504 F.2d 419, 420–21 (2d Cir.1974); *Pui Kan Lam,* 483 F.2d at 1208; *United States v. Arcuri,* 405 F.2d 691, 695 (2d Cir.1968), *cert. denied,* 395 U.S. 913, 89 S.Ct. 1760, 23 L.Ed.2d 227 (1969).

■ These two propositions, however, are not helpful to the government's case here. In each of the cases in which the jury's disbelief was relied on as a factor supporting affirmance, the evidence apart from the incredibility of the defendant's testimony was sufficient or very close to sufficient. We merely added that the defendant's incredible story was another circumstance that the jury was entitled to consider. Here, on the other hand, the

---

1. The government argues that the jury could have concluded that two dollars of the two dollars and seventy-five cents Tyler was carrying at the time of his arrest came from Bennett. From this, the government claims that the jury could have inferred that Tyler had a stake in the outcome of Bennett's sale. The evidentiary support for these inferences along with the other evidence in this case is simply not substantial enough to establish a conspiracy between Tyler and Bennett.

2. The government cites *United States v. Teal,* 582 F.2d 343 (5th Cir.1978), as a case that "strongly resembles" the case before us and supports affirmance. We find *Teal* clearly inapposite. In *Teal,* the existence of the conspiracy was clear; the issue in that case was the defendant's participation. Under the Fifth Circuit's standard of appellate review, when the existence

of the conspiracy is established only "slight evidence" of an individual's participation is required. *Id.* at 345. Applying this standard, the court affirmed Teal's conspiracy conviction. Unlike *Teal,* here the existence *vel non* of a conspiracy is the central issue. In fact, the *Teal* Court used this very difference to distinguish the case before it from *Hyoshion. Id.* at 347 n. 4.

The government also cites us to *United States v. Frank,* 520 F.2d 1287 (2d Cir.1975), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976). As was the case in *Teal,* in *Frank,* the existence of the conspiracy was clear; the issue was the defendant's participation. Suffice it to say, the evidence of Frank's participation in the conspiracy was considerable. Thus, *Frank* does not support the government's position.

evidence of an agreement between Tyler and Bennett was nonexistent. Thus, although the jury's disbelief of a defendant's testimony may supplement already existing evidence and help make the evidence in a borderline case sufficient, in the instant case there was simply no existing evidence to supplement.[3]

In sum, even viewing the evidence in the light most favorable to the government, the evidence shows no more than that Tyler helped a willing buyer find a willing seller. Under the law of this Circuit, such evidence is insufficient to prove the existence of a conspiratorial agreement between Tyler and the seller. Thus, Tyler's conspiracy conviction must be reversed.

### 2. *Aiding and Abetting*

Tyler also urges us to reverse his aiding and abetting conviction. He argues that because the government failed to prove that he had a stake in the outcome of Bennett's sale the evidence was insufficient to establish aiding and abetting. We do not find this argument compelling.

■ Contrary to Tyler's assertion, there is no requirement that the government prove that a defendant charged with aiding and abetting had a stake in the outcome of the illegal venture. *See, e.g., United States v. Taylor*, 612 F.2d 1272, 1275 (10th Cir.), *cert. denied*, 444 U.S. 1092, 100 S.Ct. 1060, 62 L.Ed.2d 782 (1980); *United States v. Manna*, 353 F.2d 191, 192–93 (2d Cir. 1965), *cert. denied*, 384 U.S. 975, 86 S.Ct. 1868, 16 L.Ed.2d 685 (1966). Rather, the requirements for the offense of aiding and abetting are " 'that [a defendant] in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, [and] that he seek by his action to make it succeed.' " *United States v. DeFiore*, 720 F.2d 757, 764 (2d Cir.1983) (quoting *United States v. Bommarito*, 524 F.2d 140, 145 (2d Cir.

1975)), *cert. denied*, —— U.S. ——, 104 S.Ct. 3511, 82 L.Ed.2d 820 (1984).

■ Looking at the evidence in the light most favorable to the government, we conclude that these requirements have been satisfied. Tyler told Baxter that he would find him some good dope; he approached the unidentified individual, apparently in an effort to locate drugs; he continued to assist Baxter until they encountered Bennett; he apparently told Bennett what Baxter was seeking; and after Baxter and Bennett made their deal he asked Baxter for some change, apparently seeking a reward for his making good on his claim that he would find Baxter some good dope. From this evidence the jury was entitled to conclude that Tyler associated himself with the criminal venture, participated in it as something he wished to bring about and sought by his actions to make it succeed. Therefore, "[t]here was enough evidence here to support the conclusion that [Tyler] was an aider and abettor. He had sufficient ability, influence and control here to bring about a sale that, without his participation, would not have been made." *Manna*, 353 F.2d at 192.

Finally, we note that there is nothing inconsistent in our determination that the evidence was insufficient with respect to the conspiracy count but sufficient with respect to the aiding and abetting count. The two offenses are separate and distinct.

The essence of conspiracy is proof of a conspiratorial agreement while aiding and abetting requires there be a "community of unlawful intent" between the aider and abettor and the principal. While a community of unlawful intent is similar to an agreement, it is not the same. Thus, a defendant may wittingly aid a criminal act and be liable as an aider and abettor ... but not be liable for conspiracy, which requires knowl-

---

**3.** The extent to which a jury may translate its discrediting of a witness' testimony into positive proof is limited. As the Supreme Court recently stated: "When the testimony of a witness is not believed, the trier of fact may simply disregard

it. Normally the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion." *Bose Corp. v. Consumers Union*, —— U.S. ——, ——, 104 S.Ct. 1949, 1966, 80 L.Ed.2d 502 (1984).

edge of and voluntary participation in an agreement to do an illegal act. *United States v. Bright,* 630 F.2d 804, 813 (5th Cir.1980) (citations omitted); *see also United States v. Arrington,* 719 F.2d 701, 705–06 (4th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1289, 79 L.Ed.2d 691 (1984); *United States v. Krogstad,* 576 F.2d 22, 29 (3d Cir.1978).

CONCLUSION

For the foregoing reasons, Tyler's conviction on the conspiracy count is reversed and his conviction on the aiding and abetting count is affirmed.