**KETHNEY A. WILLIAMS, Appellant**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

**AYALA R. CORNELIUS, Appellant**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Criminal App. Nos. 2006-11; 2006-10

District Court of the Virgin Islands

Division of St. Thomas and St. John, Appellate Division

March 23, 2011

809

NANCY D'ANNA, ESQ., St. John, USVI, *For Appellant Kethney Williams.*

DEBRA S. WATLINGTON, ESQ., St. Thomas, USVI, *For Appellant Ayala Cornelius.*

VINCENT FRAZER, ESQ., St. Thomas, USVI, *For the Appellee.*

GÓMEZ, *Chief Judge of the District Court of the Virgin Islands*; FINCH, *Judge of the District Court of the Virgin Islands*; and DONOHUE, SR. *Presiding Judge of the Superior Court, sitting by designation.*

## MEMORANDUM OPINION

(March 23, 2011)

Following a jury trial conducted in the Superior Court of the Virgin Islands, Division of St. Thomas and St. John (the "Superior Court") Kethney Williams ("Williams") and Ayala Cornelius ("Cornelius") were convicted of unauthorized possession of a sawed-off shotgun. Each appeals his conviction. In light of the similar legal and factual issues raised in their appeals, we will consolidate their appeals. For the reasons given below, we will reverse both convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the night of July 22, 2005, Williams was walking to his mother's house outside Cruz Bay, St. John, U.S. Virgin Islands with his friend, Ayala Cornelius ("Cornelius"). They stopped to smoke a marijuana cigarette. Cornelius began rolling the cigarette near a concrete wall surrounding the Coconut Coast Condominiums. Williams walked across the street to relieve himself. Thereafter, as Williams was walking toward where Cornelius was standing, a police cruiser pulled up. Three officers got out of the vehicle and approached Williams and Cornelius. Cornelius told the police that he and Williams "were just rolling a joint." (Trial Tr. 192, Oct. 18, 2005.) One of the officers found a tennis racket bag lying beside the concrete wall. The bag contained a fully loaded sawed-off shotgun, a pair of gloves, and two long-sleeved shirts. The officers thereafter arrested Williams and Cornelius.

On August 3, 2005, the People of the Virgin Islands (the "Government") filed a five-count information against Williams and Cornelius. Count One charged Cornelius with unauthorized possession of a sawed-off shotgun in violation of title 14, section 2253(b) of the Virgin

810

Islands Code ("Section 2253(b)").[1] Count Two charged Williams with unauthorized possession of a sawed-off shotgun, in violation of Section 2253(b). Count Three charged Cornelius with unauthorized possession of ammunition in violation of title 14, section 2256(a) of the Virgin Islands Code ("Section 2256(a)"). Count Four charged Williams with unauthorized possession of ammunition, in violation of Section 2256(a). Count Five charged Cornelius with possession of marijuana in violation of title 19, section 607(a) of the Virgin Islands Code.

The trial in this matter commenced on Monday, October 17, 2005. On the morning of trial, Count Five of the information was dismissed on the Government's motion. Officers Dennis Vanterpool and Angela Brown of the Virgin Islands Police Department ("VIPD"), who were present when Williams and Cornelius were arrested on July 22, 2005, testified on behalf of the Government. Additionally, the Government offered a Wilson brand tennis racket bag and a sawed-off shot gun, which were admitted into evidence as Exhibits 1 and 2, respectively. Officer Vanterpool testified that Exhibit 1 was the same bag found near the wall on July 22, 2005. He also stated that he recognized Exhibit 2 as the object he found inside the bag. Officer Brown testified that she saw the tennis racket bag leaning against a wall near Cornelius' leg.

Williams and Cornelius testified at trial. Both men described the events leading up to his arrest on July 22, 2005. Williams and Cornelius also stated that they had never seen the bag or the gun before the police found it.

At the conclusion of the trial, Williams moved for a judgment of acquittal as to the charges against him in Counts Two and Four of the information. Cornelius moved for a judgment of acquittal as to Counts One and Three. The trial judge granted William's motion with respect to Count Four, but denied the motion with respect to Count Two. The trial judge granted Cornelius' motion with respect to Count Three, but denied his motion as to Count One. On October 19, 2005, the jury found Cornelius guilty of unauthorized possession of a sawed-off shotgun charged in Count One. The jury also returned a verdict of guilty against

---

[1] Section 2253(b) makes it unlawful for any person, "unless otherwise authorized by law, [to] ha[ve], possess[], bear[], transport[] or carr[y] either, actually or constructively, openly or concealed any . . . sawed-off shotgun, as defined in subsection (d)(2) and (3) of this section, loaded or unloaded . . . ."

Williams on the charge of unauthorized possession of a sawed-off shotgun charged in Count Two.

On November 20, 2005, the Superior Court conducted a sentencing hearing, during which it adjudged Williams guilty of unauthorized possession of a sawed-off shotgun. The court sentenced Williams to two years imprisonment, and imposed a fine against Williams in the amount of $20,000. A judgment and commitment was entered on January 27, 2006.

On November 30, 2005, the Superior Court conducted a sentencing hearing, during which it adjudged Cornelius guilty of unauthorized possession of a sawed-off shotgun. As a felon in possession of a shotgun, Cornelius was sentenced to a mandatory minimum of 15 years plus a $50,000 fine. A judgment and commitment was entered on January 27, 2006.

Williams and Cornelius timely appealed from their convictions and sentences. Williams' raises the following issues: (1) whether the Government presented sufficient evidence at trial to sustain Williams' conviction for unauthorized possession of a sawed-off shotgun; (2) whether the Superior Court abused its discretion in denying Williams' motion to exclude the Test-Fire Report; (3) whether the Superior Court abused its discretion in admitting the St. Thomas Certificate and the St. Croix Certificate into evidence; and (4) whether the sentence and fine imposed on Williams were unconstitutional. Cornelius raises the following issues: (1) whether the Government presented insufficient evidence to support Cornelius' conviction of unauthorized possession of a firearm and (2) whether the sentence and fine imposed on him were unconstitutional.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over appeals of final judgments and orders of the Superior Court filed before January 29, 2007, the date on which the Supreme Court of the Virgin Islands was certified as ready to assume such jurisdiction. *See* Revised Organic Act of 1954 23A, 48 U.S.C. § 1613a;[2] Act No. 6730 § 54(d)(1) (Omnibus Justice Act of 2005).

---

[2] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2000), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

We exercise plenary review over the trial court's conclusions of law. *Saludes v. Ramos,* 744 F.2d 992 (3d Cir. 1984). Accordingly, constitutional claims are given plenary review. *Warner v. Gov't of the V.I.,* 332 F. Supp. 2d 808, 810, 46 V.I. 251 (D.V.I. App. Div. 2004). The sufficiency of the evidence supporting an appellant's conviction is also subject to plenary review. *See United States v. Taftsiou,* 144 F.3d 287, 290 (3d Cir. 1998); *Castillo v. Gov't of the V.I.,* 48 V.I. 519, 523 (D.V.I. App. Div. 2006). "However, we afford the more deferential clear error review to [the trial court's] factual determinations." *Garcia v. Gov't of the V.I.,* 480 V.I. 530, 534 (D.V.I. App. Div. 2006) (citing *Gov't of the V.I. v. Albert,* 89 F. Supp. 2d 658, 663, 42 V.I. 184 (D.V.I. App. Div. 2001)); *see also Saludes v. Ramos,* 744 F.2d 992 (3d Cir. 1984).

Reversal may be avoided if trial errors are found to be harmless. *See* FED. R. CRIM. P. 52(a) (2002) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.")[3]; *United States v. Hakim,* 344 F.3d 324 (3d Cir. 2003). Where trial counsel fails to object to an error, we reverse only if the asserted violation amounts to "plain error." *See* FED. R. CRIM. P. 52(b) (2002) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Davis,* 407 F.3d 162, 164 (3d Cir. 2005).

## III. ANALYSIS

### A. Sufficiency of the Evidence

Williams and Cornelius argue that the Government presented insufficient evidence at trial to sustain their convictions for unauthorized possession of a sawed-off shotgun under Section 2253(b).

In evaluating the sufficiency of the evidence, we are "required to determine whether the evidence and all reasonable inferences which may be drawn therefrom, viewed in the light most favorable to the government as verdict winner, would permit a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt of every element of the offense." *Castillo,* 48 V.I. at 523; *see also United States v. Wolf,* 245 F.3d 257, 261 (3d Cir. 2001). The inquiry requires an "examin[ation] of the

---

[3] Federal Rule of Criminal Procedure Rule 52(a) is made directly applicable to the Superior Court by Rule 7 of the Rules of the Superior Court.

totality of the evidence, both direct and circumstantial." *United States v. Gambone,* 314 F.3d 163, 170 (3d Cir. 2003). "[A] claim of insufficiency of the evidence places a very heavy burden on an appellant." *United States v. Gonzalez,* 918 F.2d 1129, 1132 (3d Cir. 1990) (quotation omitted); *see also Abiff v. Gov't of the V.I.,* 313 F. Supp. 2d 509, 511 (D.V.I. App. Div. 2004) ("[T]his Court may overturn the appellant's conviction only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt." (quotation omitted)).

■ To sustain a conviction for a violation of Section 2253(b), the Government must prove beyond a reasonable doubt that: (1) the defendant possessed or had under his control a sawed-off shotgun;[4] (2) that such possession was without authority of law; and (3) that the weapon was operable. *See* 14 V.I.C. § 2253(b); 23 V.I.C. § 451(d); *see also United States v. Betancourt,* 116 F.3d 74, 75, 36 V.I. 379 (3d Cir. 1997) (listing the elements of a Section 2253(b) violation).

With respect to the first element, it is clear that Williams and Cornelius were not found in actual possession of the sawed-off shotgun. Therefore, the Government was required to present sufficient evidence that the defendants constructively possessed the weapon.

■ To prove constructive possession, the Government must show that the defendants knew of the sawed-off shotgun and had "both the power and the intention . . . to exercise dominion or control over [it.]" *United States v. Iafelice,* 978 F.2d 92, 96 (3d Cir. 1992); *see also United States v. Xavier,* 2 F.3d 1281, 1289, 29 V.I. 279 (3d Cir. 1993) (explaining that, to prove constructive possession under Section 2253, "the gun must be . . . under the defendant's control"). While proximity to the gun is a substantial consideration in this analysis, *see United States v. Lopez,* 271 F.3d 472, 487-88, 44 V.I. 311 (3d Cir. 2001), proximity alone is insufficient to establish control. *See United States v. Jenkins,* 90 F.3d 814, 818 (3d Cir. 1996). Indeed, "evidence of knowledge and access may be . . . inferred from circumstantial evidence, so long as the circumstantial evidence includes something other than mere proximity[.]" *United*

---

[4] A sawed-off shotgun is defined as "any firearm . . . designed to fire through a smooth bore either a number of ball shot or a single projectile, the barrel of which is less than 20 inches in length." 14 V.I.C. § 2253(d)(3). The parties in this case do not dispute that the weapon in question fell within this definition.

*States v. Jameson,* 478 F.3d 1204, 1209-10 (10th Cir. 2007); *see also United States v. Laughman,* 618 F.2d 1067, 1077 (4th Cir. 1980) (explaining that "where other circumstantial evidence . . . is sufficiently probative, proximity to contraband coupled with inferred knowledge of its presence will support a finding of guilt on such charges") (internal quotations and citations omitted). "Thus, we look for certain 'plus factors,' such as 'connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise' in completing the inquiry." *United States v. Bellinger,* 284 Fed. Appx. 966 (3d Cir. July 9, 2008) (quoting *United States v. Booker,* 436 F.3d 238, 242, 369 U.S. App. D.C. 276 (D.C. Cir. 2006)).

Here, Williams testified at trial that, on the night of July 22, 2005, he and Cornelius had been walking together when they stopped near a concrete wall to smoke a marijuana cigarette. Williams also testified that he was standing approximately ten feet away from Cornelius when the police pulled up.

Officer Brown testified that she saw the tennis racket bag "down by [Cornelius'] leg against the wall." (Trial Tr. 52, Oct. 18, 2005.) When testifying at trial, Williams did not respond to a question regarding whether the bag was near Cornelius' foot when the officers arrived. Cornelius testified that when Officer Vanterpool asked who owned the bag, he responded "what bag?" (*Id.* at 165.)

Officer Vanterpool testified that the tennis racket bag was discovered "leaning against the wall between the two defendants." (*Id.* at 130.) He also stated that the sawed-off shotgun was found inside the bag, along with a pair of gloves and two long-sleeved shirts. The Government asserts that Cornelius' proximity to the tennis bag together with what they characterize as the defendants' unconvincing testimony about their lack of knowledge of the bag was sufficient to support an inference of Cornelius' guilt. It also contends that the testimony of Williams and Officer Vanterpool could support the inference that Williams could have gained immediate possession of the gun, and that such inference is sufficient to sustain Williams' conviction. As authority for its contention, the Government relies on *United States v. McKie,* 112 F.3d 626, 36 V.I. 367 (3d Cir. 1997).

However, the factual circumstances of *McKie* are very different from the facts at issue in this case. In *McKie,* the defendant was driving a car carrying two passengers when he was stopped for a traffic violation. The

officers arrested the defendant after spotting a revolver on the back seat of the car, a machine gun on the front passenger floorboard, and a pistol on the rear passenger floorboard. The defendant was convicted of violating Section 2253(a) and Section 2253(b). On appeal, the defendant argued that his convictions could not stand because the weapons were not under his control, as required by the statute. The Third Circuit rejected that argument. It held that the evidence was sufficient to sustain a finding that the guns were under the defendant's control based on the testimony of one of the arresting officers that all the firearms were in plain view inside the vehicle, which had been described as "subcompact" and "cramped." *See id.* at 629. The court explained that such evidence could support the reasonable inference that the defendant "knew of and had immediate access to the gun." *Id.*

In *United v. Brunson,* 16 Fed. Appx. 727 (9th Cir. 2001) (unpublished), the Ninth Circuit upheld a felon in possession of a firearm conviction where, more similarly to this case, the firearm was found lying on a sidewalk. The court reasoned that "the government presented a good deal of evidence in support of its theory that [the defendant] brandished the weapon on D Street, and then discarded it as he fled the encounter in his car." *Id.* at 728. During the trial in *Brunson,* a police officer testified that he saw the defendant holding "a large, chrome revolver consistent with the one later found nearby." *Id.* Another officer testified that he saw the defendant's car turn onto the street where the gun was found. Additionally, an expert testified that "the scrapes and abrasions on the gun were consistent with it having bounced and slid on a concrete surface, but not consistent with it having merely been dropped on concrete." *Id.* The court found this evidence sufficient for the jury to conclude beyond a reasonable doubt that the defendant possessed the gun that was found on the sidewalk. *Id.*

On the other hand, in *United States v. Nevils,* 548 F.3d 802 (9th Cir. 2008), the Ninth Circuit reversed a conviction for possession of a firearm by a felon because the government failed to prove possession. In *Nevils,* police officers were investigating gang activity in an apartment building when they encountered the defendant asleep on a couch in one of the units. "Leaning against [the defendant's] body were two firearms-one on his lap and another leaning against his leg." *Id.* at 804. On a coffee table next to the couch were several items, including bags of marijuana and ecstasy, a cell phone, and currency. When reversing the defendant's

conviction, the Ninth Circuit explained that, although the defendant was alone in the apartment at the time the guns were discovered, there was no evidence that his access to the apartment was exclusive. *See id.* at 808. The court also emphasized that "the Government did not offer evidence tying [the defendant] to any of the other personal items in the apartment," nor did it establish that the defendant exhibited any suspicious behavior, such as scrambling to hide the guns. *Id.* Therefore, the court concluded that despite the extremely close proximity of the defendant to the firearms, the evidence was insufficient to show that the sleeping defendant had knowledge of the guns. Without any other evidence linking the defendant to the firearms, the court held that no rational jury could find that he exercised dominion and control over the firearms. *See id.* at 808-11.

■ Similarly, in *United States v. Pedro,* 999 F.2d 497 (11th Cir. 1993), the Eleventh Circuit reversed a conviction for being a felon in possession of a firearm because the defendant's ties to the firearm were too tenuous. In that case, the defendant was arrested for burglary. At the scene of the arrest, the police found a firearm inside a suitcase that was carried by his co-defendant. The defendant was convicted of being a felon in possession of a firearm. On appeal, the Eleventh Circuit reversed. The court explained that "a defendant's mere presence in the area of [an object] or awareness of its location is not sufficient to establish possession." *Id.* at 500-01 (quotation omitted) (alteration in original). It found that, even assuming that the defendant participated in the alleged burglary, "there was no evidence whether [the defendant] helped pack the suitcase or could have known that the closed, hardcover suitcase contained a firearm." *Id.* at 501. Accordingly, the court concluded that the evidence adduced against the defendant constituted "no more than intuition," and was therefore insufficient to support a finding of constructive possession. *See id.* (quotation omitted).

In stark contrast to the close quarters of the car where the weapons were found in *McKie,* the evidence presented during the Government's case-in-chief showed that the gun was discovered outside, on the ground, near a public street. Additionally, the shotgun in this case was not openly visible, but rather was concealed inside a tennis racket bag.

Furthermore, the Government did not produce any evidence that either Williams or Cornelius was ever seen brandishing the shotgun, carrying the bag, or fleeing from the scene, as in *Brunson.* The Government also

has not presented any other evidence that either defendant had any knowledge of, or connection with, the bag or the gun. The Government did not offer any proof that the defendants had a motive to commit any crime, or that they demonstrated evasive conduct or engaged in any other gesture implying control of the gun.

The presence of the two shirts in the bag adds little to the evidence against the defendants. Such evidence could arguably suggest that two people were involved in the possession of the shotgun. However, the Government presented no evidence linking either Williams or Cornelius to the shirts or any other items found in the bag in this case.

■ Viewed in the light most favorable to the Government, the evidence adduced during the Government's case-in-chief could support the inference that the sawed-off shotgun in this case was found within close proximity to the location where Williams and Cornelius were arrested. However, proximity alone is insufficient to support the reasonable inference that the defendants had knowledge of, and access to the gun. *See Jameson*, 478 F.3d at 1209-10 (explaining that proximity cannot support an inference of knowledge and access).

■ ■ After the Superior Court denied Williams'· and Cornelius' motions for a judgment of acquittal made at the close of the Government's case, each elected to take the stand and testify in his defense. Criminal defendants are not obligated to testify at trial. *Harris v. New York*, 401 U.S. 222, 225, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971). A defendant who chooses to present a defense runs a risk that doing so will bolster the prosecution's case. *McGautha v. California*, 402 U.S. 183, 214, 91 S. Ct. 1454, 1471, 28 L. Ed. 2d 711 (1971), *reh'g denied by McGautha v. California*, 406 U.S. 978, 92 S. Ct. 2407, 32 L. Ed. 2d 677 (1972), *and vacated in part on other grounds sub nom. Crampton v. Ohio*, 408 U.S. 941, 92 S. Ct. 2873, 33 L. Ed. 2d 765 (1972) ("[A] defendant whose motion for acquittal at the close of the Government's case is denied must decide whether to stand on his motion or put on a defense, with the risk that in so doing he will bolster the Government case enough for it to support a verdict of guilty."). In electing to put on a case, Williams and Cornelius waived the right to appeal the denial of their Rule 29 motions made at the close of the Government's case. *United States v. Feldman*, 425 F.2d 688, 692 (3d Cir. 1970) (explaining that, by introducing evidence, a defendant waives his Rule 29 motion made at the close of the government's case). Therefore, our review of Williams' and

Cornelius' sufficiency claims must take into account all evidence presented at trial, including that offered by the defendants. *Id.* ("Where the [Rule 29] motion is waived by the presentation of evidence by the defendant in his own behalf and then renewed at the close of all the evidence . . . the sufficiency of the evidence must be judged upon the record as a whole).

Here, Williams testified that he had not seen Cornelius carrying the bag when the two were walking together before they stopped to smoke marijuana. Additionally, both Cornelius and Williams testified that they had no knowledge of the bag or the gun. Furthermore, the defendants testified that they had never seen the bag or the gun before the police discovered the bag.

■ In determining the sufficiency of the evidence presented against Williams and Cornelius, we must assess inferences that were permissible in light of their testimony. As the United States Court of Appeals for the Third Circuit has explained, "there is no question that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." *United States v. Urban,* 404 F.3d 754, 782 (3d Cir. 2005) (quotation omitted). However, it is clear that a jury "may not infer defendant's guilt *solely* from any disbelief of his testimony[.]" *Id.* (quotation omitted). As the Third Circuit has explained, "discredited testimony is not considered a *sufficient* basis for drawing a contrary conclusion." *Id.* (quoting *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 512, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984)). Rather, a jury may draw negative inferences from a defendant's testimony only if there is other objective evidence in the record to corroborate such an inference. *See United States v. Brown,* 53 F.3d 312 (11th Cir. 1995) ("At least where some corroborative evidence of guilt exists for the charged offense . . . and the defendant takes the stand in his own defense, the defendant's testimony, denying guilt, may establish, by itself, elements of the offense."); *United States v. Eisen,* 974 F.2d 246, 259 (2d Cir. 1992) ("[T]he jury is free to draw negative inferences from an untruthful witness's testimony as long as there is affirmative testimony to supplement or corroborate those negative inferences."); *United States v. Martinez,* 514 F.2d 334, 341 (9th Cir. 1975) ("Disbelief of a defendant's own testimony may provide at least a partial basis for a jury's conclusion that the opposite of the testimony is the truth. . . . But such belief can provide only partial support: there must also be 'other objective evidence

on the record which buttresses the fact finder's drawing of the opposite inference.'").

Here, the jury was free to view Williams' and Cornelius' testimony that they had never seen the shotgun before as dishonest. *See United States v. George,* 209 Fed. Appx. 142, 146 (3d Cir. Dec. 13, 2006) ("A jury is free to believe or disbelieve the testimony of any witness that appears at trial.") (unpublished). Furthermore, the jury was entitled to consider Williams' and Cornelius' testimony as affirmative evidence of guilt, so long as the other evidence on the record was sufficient to corroborate a finding that they possessed the gun. *See Urban* 404 F.3d at 782; *Eisen,* 974 F.2d at 259; *Martinez,* 514 F.2d at 341. While it is clear that some other corroborative evidence is required in order for the jury to use a negative inference from the defendant's testimony as affirmative evidence of guilt, the United States Court of Appeals for the Third Circuit has not addressed the issue of exactly how much corroborative evidence is necessary. Furthermore, other circuits have yet to articulate a clear standard with respect to this issue.[5] *See Stallings v. Tansy,* 28 F.3d 1018, 1024 (10th Cir. 1994) (noting that courts "do not agree . . . on the circumstances that will support such an inference"); *United States v. Zeigler,* 994 F.2d 845, 850, 301 U.S. App. D.C. 298 (D.C. Cir. 1993) ("There is no principled way of deciding when the government's proof, less than enough to sustain the conviction, is nevertheless enough to allow adding negative inferences from the defendant's testimony to fill the gaps.").

In *United States v. Zafiro,* 945 F.2d 881 (7th Cir. 1991), the United States Court of Appeals for the Seventh Circuit held that there was sufficient evidence to sustain the conviction of the defendant, Zafiro, for participating in, or aiding and abetting a conspiracy to possess with intent to distribute cocaine and other illegal drugs. The evidence presented by the government showed that law enforcement officers observed two associates of Zafiro's boyfriend, Martinez, carrying a large box to Zafiro's apartment. Inside the box was 55 pounds of cocaine. Another 20 pounds

---

[5] The Supreme Court of the United States has explained that the extent to which a jury may use a negative inference drawn from a witness' testimony into positive proof is limited: "When the testimony of a witness is not believed, the trier of fact may simply disregard it. Normally the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion." *Bose Corp. v. Consumers Union,* 466 U.S. 485, 512, 104 S. Ct. 1949, 1966, 80 L. Ed. 2d 502 (1984).

of cocaine were found in a suitcase in Zafiro's closet. Zafiro and Martinez were present in Zafiro's apartment when the officers discovered the drugs.

The Seventh Circuit commented that, "if all the government had in the way of evidence against Zafiro were that she and the drugs were both found in the apartment at the time of the arrest of her boyfriend and his two associates, a reasonable jury could not convict her of either conspiracy or aiding and abetting[.]" *Id.* at 888 (stating that "[g]uilt by association is not a permissible theory of criminal liability even in the war against drugs"). The Court, however, noted that expert testimony regarding the typical aversion of drug dealers toward delivering large amounts of illegal drugs when innocent bystanders are present helped support the government's theory. Furthermore, Zafiro had testified in her own defense at trial, denying any knowledge of Martinez' drug dealing. The Seventh Circuit declined to decide whether the evidence presented in the government's case-in-chief would have been sufficient to sustain Zafiro's conviction. Rather, the court found significant that

> [s]he testified; and on the basis of her demeanor and the expert testimony the jury was entitled to conclude that she knew what was in the suitcase and what was coming in the box. If she knew those things she knew that by providing her apartment for the storage of these containers she was aiding a drug conspiracy involving Martinez.

*Id.*

In *United States v. Tran,* 519 F.3d 98 (2d Cir. 2008), the United States Court of Appeals for the Second Circuit similarly upheld a defendant's conviction based upon the evidence presented in the government's case-in-chief, in conjunction with the defendant's own testimony. Tran was convicted of importing and possessing with intent to distribute methamphetamine, after agents discovered drugs in a hidden compartment in Tran's rental car, as he attempted to cross the border from Canada into the United States. Tran argued that the evidence presented at trial was insufficient to sustain his conviction because the government failed to prove that he knew about the drugs in the hidden compartment.

The Second Circuit began its analysis of this issue by acknowledging that "a defendant's sole occupancy of a vehicle cannot alone suffice to prove knowledge of contraband found hidden in the vehicle; corroborating evidence, such as nervousness, a false statement, or

suspicious circumstances, is necessary to prove this element." *Id.* at 105. Furthermore, the court noted that Tran testified in his own defense at trial, denying any knowledge of the drugs in the vehicle. The Second Circuit concluded that

> Because, in addition to Tran's occupancy of the vehicle, the Government introduced corroborating evidence of nervousness and suspicious circumstances, and because the jury considered and rejected Tran's own testimony denying knowledge of the drugs that were found, sufficient evidence supports the jury's finding that Tran knew that those drugs were in the vehicle.

*Id.*

On the other hand, in *United States v. Tyler,* 758 F.2d 66 (2d Cir. 1985), the government's evidence against Tyler consisted mainly of the testimony of Baxter, a detective who had purchased the heroin in question from Bennett, an alleged co-conspirator of Tyler. The Second Circuit summarized Baxter's testimony as follows:

> According to Baxter's version of the transaction, Tyler told Baxter that he would get him some good dope. After making some type of inquiry of an unidentified individual, Tyler encountered Bennett. Tyler had a brief side conversation with Bennett and Bennett then approached Baxter. Bennett and Baxter walked away from Tyler and consummated their deal. The two then separated and Tyler walked up to Baxter and asked him for some change.

*Id.* at 68.

In addition to the evidence presented by the government, the Second Circuit noted that Tyler had testified at his own trial, denying any involvement in the above-described sale. In discussing the effect of Tyler's testimony, the Second Circuit recognized that "[o]nce a defendant offers evidence after the denial of a motion for acquittal at the close of the Government's case . . . [he] waives any claim as to the sufficiency of the Government's case considered alone." *Id.* (internal quotations omitted). It also noted that "the jury has a right to consider the defendant's lack of credibility in reaching its verdict." *Id.* (internal quotations omitted). However, the court concluded that

> [t]hese two propositions . . . are not helpful to the government's case here. In each of the cases in which the jury's disbelief was relied on as

a factor supporting affirmance, the evidence apart from the incredibility of the defendant's testimony was sufficient or very close to sufficient. We merely added that the defendant's incredible story was another circumstance that the jury was entitled to consider. Here, on the other hand, the evidence of an agreement between Tyler and Bennett was nonexistent. Thus, although the jury's disbelief of a defendant's testimony may supplement already existing evidence and help make the evidence in a borderline case sufficient, in the instant case there was simply no existing evidence to supplement.

*Id.* Thus, the Second Circuit found the evidence insufficient to sustain Tyler's conviction.

Although we note that the case before us is extremely close, we find that the evidence presented by the Government is more akin to that found insufficient in *Tyler,* than that found sufficient in *Zafiro* and *Tran.* Here, the evidence presented in the Government's case-in-chief amounted to no more than Williams' and Cornelius' proximity to the weapon in question. Moreover, the Government presented no corroborative evidence. Here, in contrast, the Government failed to present any other evidence aside from Williams' and Cornelius' proximity to the gun to support an inference that the defendants had any connection with the gun, that they knew of the gun, or had the ability and intention to exercise control over the gun.

Indeed, the Government in this case has adduced no evidence from which the jury could draw a permissible inference that either Williams or Cornelius knowingly had the ability and intention to control the shotgun. Under these circumstances, we find that the evidence of Williams' and Cornelius' mere proximity to the gun is insufficient to corroborate a finding that either defendant possessed the gun, and therefore provide a basis for drawing a negative inference from Williams' and Cornelius' testimony. Thus, Williams' and Cornelius' testimony denying knowledge of the gun could not support an inference of guilt sufficient to overcome the Government's failure to produce evidence of constructive possession. *Cf. Stallings v. Tansy,* 28 F.3d 1018, 1024) (10th Cir. 1994) (holding that evidence was insufficient to sustain the defendant's conviction because "[t]he jury's disbelief of petitioner's testimony could not fill the gap left by the State's total lack of relevant evidence as to petitioner's guilty knowledge").

## IV. CONCLUSION

For the foregoing reasons, we will reverse Williams' and Cornelius' convictions for unauthorized possession of a sawed-off shotgun. An appropriate Order follows.