UNITED STATES of America, Appellee,

v.

Victor PETERSON,
Defendant-Appellant.

No. 1287, Docket 85–1055.

United States Court of Appeals,
Second Circuit.

Submitted June 11, 1985.

Decided July 22, 1985.

Donald E. Nawi, New Rochelle, N.Y., for defendant-appellant.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (David E. Brodsky, Stuart E. Abrams, Asst. U.S. Attys.), New York City, for appellee.

Before FRIENDLY, OAKES and WINTER, Circuit Judges.

FRIENDLY, Circuit Judge:

This case arose out of one of the New York City Police Department's "buy operations"—numerous purchases in a targeted area of small amounts of drugs, supposedly for personal use, by undercover agents, followed by arrests and federal prosecution of the sellers. The sweep here was "Operation Pressure Point"; the target area was the area around Eighth Avenue and 115th Street in Harlem. The undercover police officer posing as a buyer was Willie Grimball; Victor Peterson and his brother Russell were alleged to be the sellers.

Victor and Russell Peterson were charged with violating the Drug Abuse Prevention and Control Act, 21 U.S.C. §§ 801–966, in a three-count indictment returned by a grand jury in the Southern District of New York. Count One charged the defendants with conspiracy to distribute and to possess with intent to distribute heroin in violation of 21 U.S.C. § 846. Count Two charged them with distributing and possessing with intent to distribute one bag containing heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B), 845a and 18 U.S.C. § 2. Count Three charged them with possessing with intent to distribute a quantity of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2. Russell Peterson pleaded guilty in satisfaction of the indictment to Counts Two and Three, and was sentenced to concurrent one-year terms of imprisonment to be followed by a three-year special parole term. Victor Peterson pleaded not guilty and was tried before Judge Lowe and a jury. Count One was dismissed at the close of the Government's case with its consent. Victor was convicted on the two remaining counts and was sentenced to concurrent three-year terms of imprisonment to be followed by a three-year special parole term. This appeal followed.

Appellate counsel for Victor Peterson concedes that, from the evidence presented, the jury could have found the facts to be as follows:

The sale took place in the late afternoon of October 24, 1984. Grimball approached a group of people standing near a school on 115th Street and asked if any "D", (*i.e.*, heroin) was out. Victor Peterson said yes and led Grimball into the school courtyard where Grimball said he wanted a "joint" ($40 worth of heroin). Peterson had no joints, but offered Grimball two "halves" (a half is $20 worth of heroin), obtained a glassine envelope from a hole in a nearby wall, and called to his brother Russell to give Victor one of Russell's halves. Grimball, however, saw that Russell had a whole joint in his hand and asked for that instead of two halves. Victor agreed, Russell gave Grimball a glassine envelope stamped "Red Apple", and Grimball gave Victor Peterson $40 and left. A few minutes later Grimball's backup team arrested both Victor and Russell Peterson, seized from Russell three glassine envelopes, a "Red Apple" rubber stamp, and the $40 which Grimball had paid for the joint, and found in a wall in the school court-

yard a tin foil packet containing one glassine envelope partially filled with heroin. Brief for Appellant at 3–4.

 Despite appellant's contrary assertions, this evidence was ample to justify a reasonable juror's concluding beyond a reasonable doubt that Victor Peterson distributed or possessed with intent to distribute the "joint" of heroin sold to Grimball, as charged in Count Two. Peterson orchestrated the entire transaction from negotiating the sale of two "halves" of heroin with Officer Grimball to approving the sale of the "joint" being held by Russell and receiving the $40 payment from this sale. *Cf. United States v. Tyler,* 758 F.2d 66, 70 (2 Cir.1985). The evidence was also ample to convince a reasonable juror beyond a reasonable doubt that Victor Peterson possessed, either directly or constructively, with intent to distribute the glassine envelope in the school wall and/or the three glassine envelopes found upon Russell, as charged in Count Three. With respect to the heroin in the school wall, Peterson removed the envelope containing this heroin from the wall and offered to sell it to Officer Grimball; as noted in the Government's brief, "[a] clearer example of possession with intent to distribute is difficult to imagine." *Cf. United States v. Swiderski,* 548 F.2d 445, 450 (2 Cir.1977) (distinguishing between simple possession and possession with intent to distribute).[1] With respect to the glassine envelopes found on Russell, there was undoubtedly sufficient evidence for the jury to find that appellant had the sort of "working relationship or ... sufficient association with those having physical custody of the drugs so as to enable him to assure their production ... as a matter of course," *United States v. Jones,* 308 F.2d 26, 30 (2 Cir.1962) (en banc), which supports finding constructive possession. *See United States v. Baratta,* 397 F.2d 215, 224 (2 Cir.), *cert. denied,* 393

U.S. 939, 89 S.Ct. 293, 21 L.Ed.2d 276 (1968). We do not find appellant's criticism of a portion of the charge telling the jury "if you should find that this defendant committed any acts which amount to a crime, then the consequences flowing from such acts are his; they are not yours; they are not mine," as violating *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), or his criticism of the charge on the eyewitness' identification, to be worthy of discussion. This leaves only the claims that under the court's instructions some jurors might have convicted on Count Two on the basis that Victor made the sale aided and abetted by Russell while others might have convicted on the basis that Russell made the sale aided and abetted by Victor, and that some jurors might have convicted on Count Three solely because they believed that Victor was in possession of the glassine envelope in the school wall while others might have convicted solely because they believed that Victor was in constructive possession of the glassine envelopes found on Russell.

*United States v. Natelli,* 527 F.2d 311, 324–25 (2 Cir.1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976), strongly implies, if it does not actually hold, that the jury must be unanimous as to each "specification" in a count of an indictment, on which it finds the defendant guilty; in that case, one count of the indictment charged the defendants with making two false representations in a proxy statement, to wit, an earnings statement and a footnote. A clear holding that the jury must be unanimous with respect to at least one act sufficiently proved was made and explicated in *United States v. Gipson,* 553 F.2d 453, 456–59 (5 Cir.1977) (Wisdom, J.). The court there, however, added the qualification that this principle applies only insofar as the acts on which unanimity is required fall into "distinct conceptual group-

---

**1.** Appellant suggests that the quantity of heroin found in the glassine envelope concealed in the wall, 3.8 grams, "did not rise to the level needed" to establish possession with intent to distribute. However, "where there is other evidence of ... intent to distribute, possession of as small a quantity as 4 or 5 grams is sufficient to establish an intent to distribute...." *United States v. Ramirez,* 608 F.2d 1261, 1264 (9 Cir.1979). Here, Victor Peterson's actions were plainly sufficient for the jury to find the necessary intent to distribute.

ings." As we read Judge Wisdom's opinion, the "distinct conceptual grouping" qualification to the unanimity requirement refers to situations where the same act is characterized in different ways, each of which constitutes a crime under the same count of an indictment.[2] If we are correct, the two instances of possession offered in support of Count Three (the glassine envelope found in the school wall and the three glassine envelopes found on Russell) would constitute "distinct conceptual groupings" despite their close coincidence in time and similarity in nature. To the extent that *Natelli* requires unanimity as to the particular acts described in a single count of an indictment, it too certainly applies to these two acts of possession. On the other hand, although we need not decide the point for reasons subsequently discussed, it would appear to us that, under 18 U.S.C. § 2(a), which provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal," the jury should be regarded as unanimous under either *Natel-*

*li* or *Gipson* even if some jurors believed that Victor and the other jurors believed that Russell was the aider or abettor. The jury would still have been unanimous in finding that the acts proved to have been committed by Victor were sufficient to make him guilty as a principal under 18 U.S.C. § 2(a). *Cf. United States v. Gleason,* 616 F.2d 2, 20–21 (2 Cir.1979) (upholding refusal to require jury first to identify principals and then to identify aiders and abettors), *cert. denied,* 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980), and cases cited therein.

■ However, while *Natelli* may have established the need for unanimity with respect to each "specification" in each count of an indictment, *Natelli* also held that "a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications they find to be the predicate of the guilty verdict" and that a conviction based on such a verdict will stand if there was sufficient evidence with respect to each specification. 527 F.2d at 325.[3]

2. Thus, the defendants in *Gipson* were charged with violating 18 U.S.C. § 2313, which subjects to criminal liability anyone who knowingly "receives, conceals, stores, barters, sells, or disposes" of any stolen vehicle moving in or which constitutes interstate commerce. Judge Wisdom explained:

These six acts fall into two distinct conceptual groupings; the first consisting of receiving, concealing, and storing, and the second comprised of bartering, selling, and disposing. Within each grouping, the acts are sufficiently analogous to permit a jury finding of the actus reus element of the offense to be deemed "unanimous" despite differences among the jurors as to which of the intragroup acts the defendant committed. This is so for two reasons. First, the acts within each grouping are not conceptually distinct. The single act of keeping a vehicle in a certain place may constitute both concealing and storing; or the single act of marketing a vehicle may simultaneously constitute bartering, selling, and disposing. Second, distinguishing among the acts within each grouping presents characterization problems. One juror may view a defendant's actions in housing a stolen vehicle as receiving, while another juror may conclude that the same actions constitute concealing or storing. Similar definitional problems would likely confront a jury faced with

the task of choosing among the terms bartering, selling, and disposing for the proper label for a defendant's actions.

On the other hand, the two conceptual groupings are sufficiently different so that a jury finding of the actus reus element of the offense would not be "unanimous" if some of the jurors thought the defendant committed only an act in the first conceptual grouping while others believed he committed an act only in the second. Differentiating the course of conduct prohibited by the first grouping from that proscribed by the second presents neither the conceptualization nor the characterization problems posed by distinguishing the acts within each grouping. The individual jurors and the collective jury could be expected to perceive and understand that the conduct prohibited by the first grouping, that relating to the housing of stolen vehicles, is distinct and different from the conduct forbidden by the second grouping, that dealing with the marketing of stolen vehicles.

553 F.2d at 458.

3. On the count of the *Natelli* indictment containing two specifications, defense counsel, unlike trial counsel in this case, requested an instruction that the jury "must be unanimous on which, if either, of the two specifications had been proven ... beyond a reasonable doubt."

We subsequently followed *Natelli* in this respect in *United States v. Murray,* 618 F.2d 892, 898–99 (2 Cir.1980), and found a general unanimity charge sufficient where a single-count indictment charged conspiracy to import and to distribute cocaine and marijuana. *See also United States v. DiLapi,* 651 F.2d 140, 146 (2 Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982), which distinguished *Gipson* on the basis that the judge in that case had affirmatively told the jury that they need not all agree on which one of several specified acts the defendants had committed. Any possibility of success by Peterson thus must hinge on the fact that Judge Lowe departed from the usual "general instruction on unanimity," approved in *Natelli,* which simply instructs the jury that its verdict must be unanimous,[4] by elaborating as follows:

> [y]ou will, or you must arrive at a verdict that all 12 jurors agree upon. In other words, you cannot have on count [three], 10 jurors agreeing on something and count [two], 2 jurors, making a total of 12. Your verdict must be the result of 12 jurors agreeing on count [two], and 12 jurors agreeing on count [three].

Although it might be argued that the jury could have drawn from this instruction the negative inference that all twelve jurors need not agree on the basis for a finding of guilt under a single count, such an argument would be strained. In any event, trial counsel for defendant raised no objection to this portion of the charge and did not request a specific unanimity instruction as to either Count Two or Count Three; defendant thereby forfeited any claim of error in the charge, F.R.Crim.P. 30, unless the error, if there was one, was so plain that "the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982) (quoted in *United States v. London,* 753 F.2d 202, 205 (2 Cir.1985)); F.R.Crim.P. 52(b). A case of this sort, where, in endeavoring to protect the defendant against non-unanimous verdicts on the two counts, the judge might inadvertently have used language which on a tortured reading could be considered to suggest that unanimity was not required with respect to the acts supporting a guilty verdict on one count, is precisely the kind of situation to which F.R.Crim.P. 30 is addressed. If the alleged error had been called to the judge's attention, she would surely have corrected it.

Affirmed.

---

527 F.2d at 324. Judge Gurfein, writing for this court, recognized that the requested instruction was proper and stated that it would be "sound practice" to give it "[w]hen there is more than one specification as a predicate for guilt, each dependent on particular evidence which is unrelated to the other," but held, relying on *United States v. Remington,* 191 F.2d 246, 250 (2 Cir. 1951) (Swan, J.), *cert. denied,* 343 U.S. 907, 72 S.Ct. 580, 96 L.Ed. 1325 (1952), that it was not reversible error to refuse to give it when a general charge on unanimity had been given.

4. In *Natelli,* after explaining to the jury that it must reach a separate verdict as to each of the defendants, Judge Tyler instructed that "[y]our verdict either way with respect to the defendants must be unanimous under our system." The unanimity instruction recommended by Devitt and Blackmar is equally straightforward: "The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous." 1 Devitt & Blackmar, Federal Jury Practice and Instructions, § 18.01 (3d ed. 1977). *See also* Federal Judicial Center, Pattern Criminal Jury Instruction No. 9 at 16 (1982) ("The decisions you reach in the jury room, whether guilty or not guilty, must be unanimous. You must all agree.").