[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10868
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-00272-AT-JSA-3

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LAQUAN JOHNSON,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 17, 2019)

Before MARTIN, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

After a jury trial, LaQuan Johnson was convicted of aiding and abetting the discharge of a firearm during and in relation to a drug-trafficking offense and of aiding and abetting the attempted possession with intent to distribute marijuana. Johnson appeals the firearm conviction, arguing that the evidence was not sufficient to show that he aided and abetted the discharge of a firearm and that the jury was improperly allowed to reach a verdict on that count without unanimously agreeing as to which codefendant he aided and abetted. After careful review, we affirm.

**I.**

In July 2015, a federal grand jury indicted Johnson and two codefendants, Deontray Bellman and Brandi Jackson, with aiding and abetting the attempted possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D), and 18 U.S.C. § 2 (Count One), and aiding and abetting the use, carry, and discharge of a firearm during and in relation to that drug-trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 (Count Two). Johnson was also charged with possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) (Count Four). Bellman and Jackson pled guilty, while Johnson proceeded to trial.

Johnson's jury trial began in April 2017. At the close of the government's case, Johnson moved for a judgment of acquittal under Rule 29, Fed. R. Crim. P., which the district court denied. The jury found Johnson guilty of Counts One and

2

Two but not guilty of Count Four. After the verdict, Johnson filed a written motion for judgment of acquittal or, in the alternative, a motion for new trial, which the court denied. The court then sentenced Johnson to serve a total of 122 months in prison.

Johnson now challenges the § 924(c) conviction on two grounds. First, he contends that the physical evidence proved that neither he nor his codefendants discharged a firearm. Second, he argues that the jury instructions, verdict form, and the government's closing and rebuttal arguments permitted the jury to arrive at a non-unanimous verdict as to which codefendant he aided and abetted.

## A.

We begin with a summary of the trial evidence, presented in the light most favorable to the jury verdict.[1] On March 22, 2013, Johnson and his two codefendants, Bellman and Jackson, drove from South Carolina to Atlanta in Johnson's red Range Rover to buy around $1,000 worth of marijuana from Leslie Robinson. They arranged to meet Robinson in the parking deck of the Varsity restaurant near downtown Atlanta. When they arrived, Johnson parked the Range Rover, and Robinson got into the back seat with the marijuana in his jacket and a silver gun tucked into his waistband. At that time, Jackson was in the front

---

[1] *United States v. Albury*, 782 F.3d 1285, 1293 (11th Cir. 2015) ("When the sufficiency of the evidence is challenged, we view the evidence in the light most favorable to the verdict, and draw all reasonable inferences and credibility choices in the verdict's favor." (alteration adopted) (quotation marks omitted)).

passenger's seat and Bellman was behind Robinson in the back cargo area. Robinson did not see Bellman in the car. According to Jackson, Bellman had moved from the back seat to the cargo area shortly before they arrived at the Varsity.

Robinson testified that he handed the marijuana to Johnson, who was unhappy with it. Johnson and Robinson argued, and Johnson told Robinson he was "going to die today." Scared, Robinson reached for the door handle, but the door wouldn't open. Then, Bellman "pop[ped] up" from behind Robinson and pressed what felt like a gun to the back of his head. Johnson and Jackson each also had a gun out.

What happened next is not precisely clear, but it involved multiple gunshots and at least two car accidents. In Robinson's telling, Johnson began driving to exit the parking deck when the first shot was fired. Robinson then grabbed for the gun Jackson was holding with his left hand and tried to hit her with his right hand. The gun discharged in Jackson's hand and blew the tip off of Robinson's ring finger. Robinson then pulled out his gun and "start[ed] firing" while struggling to get to the front seat so he could exit the Range Rover. Johnson drove into another vehicle, and while the Range Rover was stopped, Jackson opened the passenger door and fled. Johnson continued to drive for another block before getting into a second, disabling accident at the intersection of Spring and North Streets. When the Range Rover came to rest, Johnson opened the driver's door and ran. Robinson then left from that same door, leaving his gun behind.

In her testimony, Jackson denied having a gun and said that she heard only one gunshot before leaving the Range Rover. She also testified that she saw Johnson in possession of a gun twice on March 22, first when he put a gun under the driver's seat before reaching the Varsity and then when he had a gun in his hand as she fled.

When police arrived at the scene, they found Bellman, badly wounded from multiple gunshots, lying in the back cargo area of the Range Rover. Robinson was apprehended running from the vehicle. The officer who handcuffed Robinson noticed that one of his fingers was injured, and Robinson told the officer that he had been shot. Officers canvassed the area and eventually found Johnson hiding under a stairwell. Johnson was wearing a white t-shirt with blood spatter on the right shoulder and arm area, though he had not been shot.

Three guns were recovered from the Range Rover. A .40-caliber Smith and Wesson handgun and a .45-caliber Colt handgun were found on the driver's floorboard. The Smith and Wesson had no bullets in it, but the Colt was loaded with eight bullets—seven in the magazine and one in the chamber. No fingerprints were found on either firearm, though the Colt appeared to have blood on it. A 9mm Lorcin handgun loaded with eight bullets was recovered from the back seat. Robinson identified the 9mm gun as the one he had. Investigators also found two .40-caliber shell casings, one .45-caliber bullet, and one bullet fragment. Robinson estimated that more than ten shots were fired inside the Range Rover. Testing of Johnson's

5

and Jackson's hands for gunshot primer residue indicated that they "either discharged a firearm, w[ere] in close proximity to a firearm upon discharge, or came into contact with an item bearing [gunshot residue]."

**B.**

During closing arguments, the government argued that the jury could convict Johnson of aiding and abetting the discharge of a firearm if either Jackson or Bellman discharged a firearm. The district court then provided, in relevant part, the following instruction on aiding and abetting liability:

> A defendant aids and abets a person if the defendant intentionally joins with the person to commit a crime. A defendant is criminally responsible for the acts of another person if the defendant aids and abets the other person.

With regard to Count Two, the § 924(c) count, the court instructed:

> The defendant can be found guilty of this crime only if all of the following facts are proved beyond a reasonable doubt. First, that the defendant committed the drug trafficking crime charged in Count 1 of the indictment. And, two, that during and in relation to the crime charged in Count 1, the defendant knowingly used and carried a firearm or aided and abetted another to do so as charged in the indictment.
>
> . . . .
>
> A defendant who aids and abets the crime of possessing a firearm in furtherance of a drug trafficking crime can be found guilty even if the defendant did not personally possess the firearm. But to be found guilty on this basis, the defendant must have actively participated in the drug trafficking crime with advance knowledge that another participant would possess a firearm in furtherance of the drug trafficking crime.

6

The court also instructed the jury that its "verdict in this case, whether guilty or not guilty of any of the charges, must be unanimous.  In other words, you must all agree about the verdict as to each of the charges."  It then repeated that instruction, stating the "verdict, whether guilty or not guilty, must be unanimous," and that jurors "must all agree . . . [on] the verdicts essential[] to each of the counts."

The verdict form, in relevant part, asked the jury to check "Guilty" or "Not Guilty" "[a]s to Count Two of the Indictment charging the Defendant with aiding and abetting the use of carrying of a firearm during and in relation to a drug trafficking crime."  The jury checked "Guilty."

## II.

We review *de novo* the denial of a motion for judgment of acquittal challenging the sufficiency of the evidence to support a guilty verdict.  *United States v. Albury*, 782 F.3d 1285, 1293 (11th Cir. 2015).  In reviewing evidentiary sufficiency, "we view the evidence in the light most favorable to the verdict and draw all reasonable inferences and credibility choices in the verdict's favor."  *Id.* (alteration adopted) (quotation marks omitted).  "We will not overturn a verdict if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt."  *Id.* (quotation marks omitted).

"The jury has exclusive province over the credibility of witnesses," and we may not revisit the jury's credibility judgments unless a witness's testimony "is

7

incredible as a matter of law." *United States v. Feliciano*, 761 F.3d 1202, 1206 (11th Cir. 2014) (quotation marks omitted). Testimony is incredible as a matter of law only if the witness testifies as to "facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature." *Id.* (quotation marks omitted).

Under 18 U.S.C. § 924(c), a person who possesses a firearm during and in relation to a drug-trafficking crime or a crime of violence is subject to a minimum consecutive sentence of ten years if the firearm is discharged, seven years if the firearm is brandished, or five years otherwise. 18 U.S.C. § 924(c)(1)(A)(i)–(iii). Under 18 U.S.C. § 2, a person who "aids, abets, counsels, commands, induces or procures" the commission of a crime "is punishable as a principal." 18 U.S.C. § 2(a). In other words, aiding and abetting liability holds a person "responsible for a crime he has not personally carried out if he helps another to complete its commission." *Rosemond v. United States*, 572 U.S. 65, 70 (2014).

Johnson maintains that the trial evidence leads inescapably to the conclusion that only Robinson discharged a firearm, and not Johnson or his two codefendants. He notes that all shell casings found in the Range Rover were of the same type of ammunition, which matched just one of the guns. Because it was undisputed that Robinson discharged his firearm, it follows, according to Johnson, that the shell casings came from Robinson's gun and no other. And the parties agree that Johnson

8

cannot be liable for aiding and abetting Robinson. Johnson does not otherwise challenge the grounds for the jury verdict.

Accordingly, the sole issue in this sufficiency challenge is whether a reasonable jury could have found that either Johnson or his two codefendants discharged a firearm. Sufficient evidence supports that finding. A jury reasonably could have credited Robinson's testimony that Jackson was holding a gun that discharged in her hand when he grabbed for it and tried to hit her. *See Feliciano*, 761 F.3d at 1206. Robinson's testimony on this point was supported by physical evidence and other testimony. Three firearms were found inside the vehicle, which supports Robinson's testimony that he saw both Johnson and Jackson with a firearm. Additionally, the observed injury to Robinson's finger and the blood spatter on Johnson's right arm and one of the guns were consistent with Robinson's testimony that he suffered a close-range gunshot wound to his finger near the front passenger side of the vehicle, where Jackson was sitting.

While the shell casings found in the Range Rover leave some doubt as to how many shots were fired and which firearms were discharged, they do not render Robinson's testimony incredible as a matter of law. *See id.* The jury was not required to conclude that the shell casings found in the SUV were the only rounds

9

fired.[2]  The jury heard that the Range Rover was in multiple accidents, that three people fled from the vehicle after the first shots were fired, and that the crime scene, near a busy intersection, was chaotic.  It's possible under the "laws of nature" that shell casings had fallen out of the Range Rover before it was searched or that crime-scene technicians simply missed some evidence inside the Range Rover.  *See id.*  The shell casings were a matter for the jury to assess when evaluating Robinson's credibility, and we will not disturb the jury's credibility determination.

Accordingly, sufficient evidence supports Johnson's conviction for aiding and abetting the discharge of a firearm during and in relation to a drug-trafficking crime.

**III.**

Johnson next contends that the jury instructions, in combination with the verdict form and the government's closing and rebuttal arguments, allowed the jury to reach a non-unanimous guilty verdict as to the § 924(c) count.  Specifically, according to Johnson, the jury was permitted to convict him "without a unanimous finding that he aided and abetted any particular person," in violation of his Sixth Amendment right to a unanimous jury verdict.

We review this argument for plain error because Johnson did not object to the jury instructions before the district court.  *United States v. Felts*, 579 F.3d 1341,

---

[2] Although Johnson notes the number of bullets found in the Colt .45 and the Lorcin 9mm, there is no evidence as to these firearms' capacity, so his assertion that these firearms were "fully loaded" and unfired is not supported by the record.

1343 (11th Cir. 2009).    Under the plain-error standard, the defendant must demonstrate that (1) an error occurred, (2) the error was plain, and (3) the error affected substantial rights. *Id.* at 1344.  "An error is not plain unless it is contrary to explicit statutory provisions or to on-point precedent in this Court or the Supreme Court." *United States v. Hoffman*, 710 F.3d 1228, 1232 (11th Cir. 2013) (quotation marks omitted).  Further, "[j]ury instructions will not be reversed for plain error unless the charge, considered as a whole, is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice, or the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Starke*, 62 F.3d 1374, 1381 (11th Cir. 1995) (quotation marks omitted).

"[A] jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element." *Richardson v. United States*, 526 U.S. 813, 817 (1999).  But "a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Id.*  For instance, jury disagreement about whether a robber used a knife or a gun—a disagreement about means—would not matter so long as the jury "unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force." *Id.*; *see United States v. Verbitskaya*, 406 F.3d 1324, 1334 (11th Cir. 2005) (holding that a special unanimity

11

instruction was not required "on the government's four alternative theories on how interstate commerce was affected by the extortion" in a Hobbs Act prosecution).

Here, Johnson cannot establish plain error. He has identified no "on-point precedent in this Court or the Supreme Court" holding that unanimity is required as to which of several culpable accomplices the defendant aided and abetted. *See Hoffman*, 710 F.3d at 1232. Nor do we find it clear or obvious that unanimity is required in these circumstances. *See, e.g.*, *United States v. Peterson*, 768 F.2d 64, 67 (2d Cir. 1985) ("[T]he jury should be regarded as unanimous . . . even if some jurors believed that Victor and the other jurors believed that Russell was the aider or abettor."); *Verbitskaya*, 406 F.3d at 1334 (holding that a special unanimity instruction was not required "on the government's four alternative theories on how interstate commerce was affected by the extortion in this case").

In any case, the district court here instructed the jury that its verdict "must be unanimous" and that the jurors "must all agree about the verdict as to each of the charges." So even assuming unanimity was required as to which codefendant Johnson aided and abetted, jurors would have understood from the court's general unanimity instruction that they were required to "all agree" on which set of facts grounded the conviction. *See, e.g.*, *United States v. Harris*, 8 F.3d 943, 945 (2d Cir. 1993) ("[A] general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications they find to be the

12

predicate of the guilty verdict."). The instructions, considered as a whole, were not "so clearly erroneous as to result in a likelihood of a grave miscarriage of justice" or to "affect the fairness, integrity, or public reputation of judicial proceedings." *Starke*, 62 F.3d at 1381.

For these reasons, we affirm Johnson's convictions.

**AFFIRMED.**